STATE OF NORTH CAROLINA v. VINCENT TODD CARPENTER, Defendant

No. COA01-1600

(Filed 31 December 2002)

**1. Jury— dismissal of jurors—ex parte communication— absence of defendant**

The trial court did not err in an assault inflicting serious injury and assault on a female case by conducting alleged ex parte communication with jurors and thereafter dismissing those jurors, because: (1) defendant's trial had not commenced when the court held unrecorded bench conferences and deferred five jurors; and (2) the jurors were not excused at a stage of defendant's trial, and defendant did not have the right to be present at the conferences.

**2. Constitutional Law— denial of right to self-representation—no plain error**

Although defendant contends he is entitled to a new trial in an assault inflicting serious injury and assault on a female case based on the trial court's denial of defendant's request to represent himself, this assignment of error is dismissed because: (1) plaintiff failed to object at trial and plain error review involves either errors in the judge's jury instructions or rulings on the

admissibility of evidence; and (2) defendant's assignment of error does not involve jury instructions or the admissibility of evidence.

**3. Appeal and Error— preservation of issues—failure to raise constitutional issue at trial**

Although defendant contends the trial court violated his equal protection rights by failing to vacate his habitual misdemeanor assault conviction under N.C.G.S. § 14-33(c)(3), this assignment of error is dismissed because: (1) defendant did not raise the constitutionality of the statute at trial; and (2) the Court of Appeals will not review constitutional questions that were not raised or passed upon in the trial court.

**4. Assault— inflicting serious injury—sufficiency of evidence—volitionally or knowingly causing injuries**

The trial court did not err by denying defendant's motion to dismiss the charge of assault inflicting serious injury under N.C.G.S. § 14-33 based on alleged insufficient evidence to show that defendant volitionally or knowingly caused these injuries, because the evidence viewed in the light most favorable to the State revealed that defendant broke a bone in the victim's mouth, damaged the victim's tooth, and broke a bone in the victim's hand.

**5. Assault— instruction—definition including "attempt"— not plain error**

The trial court did not commit plain error by giving the jury a definition of assault that included "attempt or the unequivocal appearance of an attempt with force and violence to do some immediate physical injury" when the indictments did not allege assaults based on a theory of "attempt" because the court instructed the jury that, in order to find defendant guilty of assault on a female, it must find that "the defendant intentionally assaulted the victim by hitting her with his hands and feet," and in order to find defendant guilty of assault inflicting serious injury, it must find that "the defendant assaulted the victim by intentionally and without justification or excuse hitting and/or scratching the victim."

**6. Assault— inflicting serious injury—on a female—jury instruction—theory not presented in indictment—scratching**

Assuming that the trial court erred in an assault inflicting serious injury case by instructing the jury on a theory of the case

**STATE v. CARPENTER**

[155 N.C. App. 35 (2002)]

not presented in the indictment by allowing the consideration of scratching of the victim as the cause of the injuries when the indictment alleged only hitting the victim with hands and fists, the error does not rise to the level of plain error since it did not have a probable impact on the jury's finding of guilt.

**7. Assault— inflicting serious injury—self-defense instruction**

The trial court did not commit plain error by failing to incorporate a full self-defense instruction into the assault inflicting serious injury charge, because: (1) the trial court gave a complete self-defense instruction when it instructed the jury on the assault on a female charge; (2) the trial court then instructed on the assault inflicting serious injury charge and provided a summary of the self-defense instruction and incorporated by reference the earlier instruction; and (3) the transcript revealed that the two instructions were given in close proximity.

**8. Appeal and Error— preservation of issues—failure to object at trial—no assignment of error**

Although defendant contends the trial court erred in an assault inflicting serious injury and assault on a female case by failing to instruct the jury on the lesser-included offenses of affray or simple assault, this argument is waived because: (1) defendant did not object at trial to this portion of the jury instructions; and (2) the record does not contain any assignments of error pertaining to this issue.

**9. Appeal and Error— preservation of issues—issue already decided**

Although defendant contends the trial court erred in an assault inflicting serious injury and assault on a female case by failing to vacate defendant's habitual felon conviction since his habitual misdemeanor assault conviction allegedly is not a substantive offense, this assignment of error is overruled because: (1) a panel of the Court of Appeals has decided the same issue against defendant in a different case; and (2) subsequent panels are bound to the decision until it is overturned by a higher court.

**10. Assault— habitual misdemeanor assault convictions—ex post facto laws—double jeopardy**

The trial court did not err by failing to vacate defendant's habitual misdemeanor assault convictions even though defendant contends N.C.G.S. § 14-33.2 is unconstitutional on its face and as

applied to defendant, because: (1) defendant's argument that habitual misdemeanor assault convictions violate ex post facto prohibitions has already been rejected by our Court of Appeals; and (2) the statute does not violate the United States Constitution or the North Carolina Constitution provisions against double jeopardy since the statute is a substantive offense and a punishment enhancement offense rather than a statute imposing punishment for previous crimes.

**11. Sentencing—habitual felon—incompetent prior convictions**

The trial court erred by denying defendant's motion to dismiss the habitual felon indictment based on incompetent prior convictions in the indictment, because: (1) the State did not show that defendant's New Jersey convictions were felonies under the law of New Jersey; (2) defendant's two New Jersey judgments do not state that defendant was convicted of a felony or sentenced as a felon; (3) there was no certification from any official that the two offenses were felonies in New Jersey; and (4) it cannot be concluded from the length of defendant's sentence that the offense was a felony in New Jersey.

Appeal by defendant from judgment entered 22 March 2001 by Judge Kimberly S. Taylor in Stanly County Superior Court. Heard in the Court of Appeals 14 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General, John P. Scherer, II, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender, Aaron Edward Carlos, for defendant-appellant.*

EAGLES, Chief Judge.

Vincent Todd Carpenter ("defendant") appeals from judgment entered on jury verdicts finding him guilty of assault inflicting serious injury, assault on a female, and habitual felon. After careful consideration of the briefs and record, we discern no error in part, reverse in part, vacate in part and remand for resentencing.

At trial, the State's evidence tended to show that defendant called the American Fiber and Finishing plant several times to speak with Melissa Alexander ("Alexander") on 5 August 1999. Alexander testified that she did not want to speak with defendant. Calvin Gainey ("Gainey"), a shift manager, answered one telephone call from

STATE v. CARPENTER

[155 N.C. App. 35 (2002)]

defendant and at Alexander's request, would not put Alexander on the phone. Gainey testified that defendant told him that "he was coming down to that plant and he was going to whip her God damn ass and anybody that got in the way." At approximately 1:45 p.m., Alexander saw defendant at the plant. Alexander began to run but defendant caught her and pushed her to the ground. Defendant kicked Alexander and struck her in the head and stomach. Gainey testified that he received a radio call that "some guy was downstairs beating on [Alexander]." Gainey and his manager, Shane Phillips ("Phillips"), ran to the scene. They saw Alexander lying on the ground and defendant near her. Phillips told defendant that he should leave. Defendant took a step toward Gainey and struck him in the cheek with his fist. Gainey and Phillips then grabbed hold of defendant. Defendant then attempted to grab Gainey and Gainey struck defendant twice in the head. Defendant then "claw[ed]" Gainey's face and grabbed Gainey's bottom lip, and "ripped [his] bottom lip open." Defendant stuck his fingers in Gainey's mouth and "ripped [Gainey's] soft tissue out from under [Gainey's] tongue" while Gainey bit defendant. Phillips pulled defendant away and defendant pulled his hand out of Gainey's mouth which broke Gainey's jaw. Gainey and Phillips were holding onto defendant as the three men fell to the floor. Soon after, the police arrived.

Defendant was charged with assault on a female, assault inflicting serious injury, two counts of habitual misdemeanor assault and being an habitual felon. At trial, the jury returned guilty verdicts of assault on a female and assault inflicting serious injury. Defendant stipulated to the five misdemeanors listed in the two habitual misdemeanor assault indictments. The trial court then re-impaneled the jury for the habitual felon phase of the trial. After the jury returned a guilty verdict of being an habitual felon, the trial court pronounced that she "raised the level of the two misdemeanor assaults to class H felony, habitual misdemeanor assault convictions." The trial court entered judgment and sentenced defendant to a minimum term of imprisonment of 133 months to a maximum term of 169 months. Defendant appeals.

On appeal, defendant contends that the trial court erred when: (1) the trial court engaged in *ex parte* communication with and dismissed jurors; (2) the trial court denied his request to represent himself; (3) his assault on a female conviction was not vacated because the statute is unconstitutional; (4) his assault inflicting serious injury conviction was not vacated for insufficiency of the evidence; (5) his

assault convictions were not vacated because the jury instructions were erroneous; (6) his habitual misdemeanor assault conviction was not vacated because the statute is unconstitutional; (7) his habitual felon conviction was not vacated because habitual misdemeanor assault is not a substantive offense; (8) his habitual felon conviction was not vacated because the trial court erred by failing to dismiss the indictment because of incompetent prior convictions; (9) his habitual felon conviction was not vacated because the "principal indictments" are insufficient to support his sentence as an habitual felon; (10) his habitual felon conviction was not vacated because the trial court had not found defendant guilty of a felony before the habitual felon proceeding; and (11) his sentence was not vacated because the trial court sentenced defendant at the incorrect prior record level. After careful consideration we discern no error in part, reverse in part, vacate in part, and remand for resentencing.

Defendant presents arguments relating to 18 of the 36 assignments of error in the record on appeal. Any assignments of error not argued in defendant's brief are deemed abandoned. N.C.R. App. P. 28(b)(6).

[1] First, defendant contends that the trial court's *ex parte* communication with and dismissal of jurors was inappropriate. Defendant requested full recordation of the proceedings pursuant to G.S. § 15A-1241(b). Defendant contends that the trial court held unrecorded bench conferences, deferred five jurors without noting any reasons in the record and swore in the remaining jury pool. Defendant argues that the trial court's actions violated his Sixth and Fourteenth Amendment rights under the United States Constitution and Article I, § 23 of the North Carolina Constitution. We do not agree.

On 20 March 2001, the trial court heard and ruled on defendant's motion to suppress a statement made by defendant. Defendant and his counsel were present for the hearing. After the trial court denied the motion, the trial court ruled on some other preliminary motions. Defendant and his counsel left the courtroom and the jury pool was brought in. The trial court then deferred five members of the jury pool. The clerk of court swore in the remaining members of the jury pool. The trial court then had the jury pool leave the courtroom. Defendant and his counsel came back to the courtroom for another preliminary motion. The jury pool reentered the courtroom, the trial court stated "we're ready to begin the [defendant's] trial" and jury selection commenced.

STATE v. CARPENTER

[155 N.C. App. 35 (2002)]

"The Confrontation Clause in Article I, Section 23 of North Carolina's Constitution 'guarantees the right of . . . defendant to be present at *every stage* of the trial.' " *State v. Rannels*, 333 N.C. 644, 652-53, 430 S.E.2d 254, 258-59 (1993) (emphasis in original) (quoting *State v. Smith*, 326 N.C. 792, 794, 392 S.E.2d 362, 363 (1990)). *Rannels* held that "defendant's trial had not begun when the complained of unrecorded bench conferences with prospective jurors took place. They occurred . . . before any case had been called for trial." *Id.* at 654, 430 S.E.2d at 259.

Here, defendant's trial had not commenced when the court held unrecorded bench conferences and deferred five jurors. This occurred before the trial court began defendant's trial. "The jurors were not excused at a stage of the defendant's trial and the defendant did not have the right to be present at the conferences." *State v. Cole*, 331 N.C. 272, 275, 415 S.E.2d 716, 717 (1992). This assignment of error is overruled.

[2] Defendant contends that he is entitled to a new trial because the trial court denied his request to represent himself. We do not agree.

Defendant failed to object at trial and now seeks plain error review of this assignment of error. Our Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). Defendant's assignment of error here does not involve jury instructions or the admissibility of evidence. Accordingly, this assignment of error is dismissed.

[3] Next, defendant contends that his habitual misdemeanor assault conviction must be vacated because G.S. § 14-33(c)(2) violates defendant's constitutional right to equal protection of the laws. We are not persuaded.

G.S. § 14-33(c)(2) (2001) states that "any person who commits any assault . . . is guilty of a Class A1 misdemeanor if, in the course of the assault . . . he or she: (2) Assaults a female, he being a male person at least 18 years of age." Defendant concedes that he did not raise the constitutionality of the statute at trial but requests that this Court review his claim pursuant to Appellate Rule 2. It is well settled that this Court will not review constitutional questions that "[were] not raised or passed upon in the trial court." *State v. Elam*, 302 N.C. 157,

160-61, 273 S.E.2d 661, 664 (1981). We decline to review this issue pursuant to Rule 2. This assignment of error is dismissed.

**[4]** Defendant next contends that his conviction for assault inflicting serious injury must be vacated for insufficiency of the evidence. Specifically, defendant argues that the State did not produce any evidence to show that defendant "volitionally or knowingly caused these injuries." We are not persuaded.

"When ruling on a motion to dismiss for insufficiency of the evidence, the trial court determines whether substantial evidence exists for each essential element of the offense charged, and whether defendant is the perpetrator of the offense." *State v. Gay,* 151 N.C. App. 530, 532, 566 S.E.2d 121, 123 (2002). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Mann,* 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002), *cert. denied,* —— U.S. ——, —— L. Ed. 2d —— (Nov. 4, 2002) (No. 02-6059). "[T]he trial court is not to be concerned with the weight of the evidence. Ultimately, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *State v. Lee,* 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998) (citation omitted). "In resolving this question, the trial court must examine the evidence in the light most advantageous to the State, drawing all reasonable inferences from the evidence in favor of the State's case." *Mann,* 355 N.C. at 301, 560 S.E.2d at 781. "The motion to dismiss should be denied if there is substantial evidence supporting a finding that the offense charged was committed." *State v. Craycraft,* 152 N.C. App. 211, 213, 567 S.E.2d 206, 208 (2002).

Defendant was charged with assault inflicting serious injury pursuant to G.S. § 14-33. "[A]ny person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he or she: (1) Inflicts serious injury upon another person or uses a deadly weapon." G.S. § 14-33(c)(1) (2001). "Our courts have defined 'serious injury' as injury which is serious but falls short of causing death and have indicated that 'the element of "serious bodily injury" requires proof of more severe injury than the element of "serious injury" ' " *State v. Williams,* 154 N.C. App. 176, 181, 571 S.E.2d 619, 622 (2002) (quoting *State v. Hannah,* 149 N.C. App. 713, 718-19, 563 S.E.2d 1, 4-5, *disc. review denied,* 355 N.C. 754, 566 S.E.2d 81 (2002) (citations omitted)). The indictment here alleged that defendant "did assault and strike Calvin L. Gainey, by hitting him with his hands and fists

thereby inflicting serious injury, to wit: a broken bone in Calvin Gainey's mouth, a damaged tooth and a broken bone in Calvin Gainey's hand."

Here, Gainey testified that defendant: struck him in the left cheek; "claw[ed] at my face"; "grabbed my bottom lip, and [defendant] ripped my bottom lip open"; and "stuck his hand back in my mouth and ripped my soft tissue out from under my tongue." Gainey also testified that Phillips grabbed the defendant and that defendant "pulled his hand out of my mouth and it broke my jaw, is what it done, around my tooth. And we fell to the floor." The evidence, taken in the light most favorable to the State, is sufficient to support a finding that defendant committed the assault inflicting serious injury and to withstand a motion to dismiss.

Defendant next contends that his assault convictions must be vacated because the trial court's jury instructions were erroneous. Defendant argues that the trial court erred in answering a jury question and then failing to correct the error, by instructing the jury on a theory of the case not presented by the indictment, and by failing to incorporate a full self-defense instruction into the assault inflicting serious injury charge. We are not persuaded.

[5] Defendant argues that the trial court committed plain error by erroneously answering a jury question and failing to correct it. The jury sent a question to the trial court asking for the "Definition of Assault." The trial court then instructed the jury that:

> An assault is an—is an overt act or an attempt or the unequivocal appearance of an attempt with force and violence to do some immediate physical injury to the person of another which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.

The following day, the jury sent another question to the trial court which stated: "Definition of Assault differs from 'charge' definition by omitting the word Attempt. In proving guilty [sic] of Assault does Physical contact have to occur?" The trial court then instructed the jury that:

> The agreement of all the parties, and I agreed with their recommendation, is that I ask you to rely on the jury instructions that you've already been given. You've been given the definition of assault and been given other instructions as far as the offense is concerned. And it's our belief that the answer to that question

lies within the instructions you've already been given. So I would ask you to go back through the instructions.

Defendant argues that the indictments here did not allow the State to prove either assault based on a theory of "attempt." Defendant argues that these instructions allowed the jury to consider "attempt" as a basis for a guilty verdict. We do not agree.

"In order to establish plain error, a defendant must establish that the trial court committed error and that absent this error, the jury would have probably reached a different result." *State v. Gainey*, 355 N.C. 73, 93, 558 S.E.2d 463, 477 (2002), *cert. denied*, —— U.S. ——, —— L. Ed. 2d —— (Oct. 7, 2002) (No. 02-5130). "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983).

> The error in the instructions must be "so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." We have observed that " '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' "

*State v. Lucas*, 353 N.C. 568, 584, 548 S.E.2d 712, 723-24 (2001) (citations omitted).

Here, the trial court instructed the jury for assault on a female that "the defendant intentionally assaulted the victim by hitting her with his hands and feet." For the assault inflicting serious injury charge, the trial court instructed that "the defendant assaulted the victim by intentionally and without justification or excuse hitting and/or scratching the victim." The trial court did not instruct on the definition of assault during the jury charge. However, the trial court did define assault after it received a question from the jury for a definition of assault. The trial court, with the consent of both the State and the defendant's counsel, brought the jury back to the courtroom and read the pattern jury instruction on assault to the jury. The following day, the jury sent a question seeking clarification of the definition of assault. Again, both the State and defendant's counsel agreed with the instruction by the trial court for the jury to "rely on the jury instructions that [they have] already been given."

"The trial court is not required to frame its instructions with any greater particularity than is necessary to enable the jury to understand and apply the law to the evidence bearing upon the elements of the crime charged." *State v. Weddington*, 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991). The definition of assault provided to the jury did include "attempt or the unequivocal appearance of an attempt with force and violence to do some immediate physical injury." However, the trial court's instruction during the jury charge stated that "the defendant intentionally assaulted the victim by hitting her with his hands and feet" and that "the defendant assaulted the victim by intentionally and without justification or excuse hitting and/or scratching the victim." The inclusion of "attempt" in the definition of assault and the trial court's instruction that the jury was to rely on the instructions already given do not constitute plain error. "Where the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous affords no grounds for a reversal." *State v. Jones*, 294 N.C. 642, 653, 243 S.E.2d 118, 125 (1978).

[6] Defendant further argues that the trial court erred by instructing the jury on a theory of the case not presented by the indictment. Defendant argues that the indictment charged defendant with assaulting Gainey "by hitting him with his hands and fists thereby inflicting serious injury." The trial court instructed the jury "that the defendant assaulted the victim by intentionally and without justification or excuse hitting and/or scratching the victim; and second, that the defendant inflicted serious injury upon the victim." Defendant argues that this instruction reduced the burden of proof and allowed the jury to consider scratching as the cause of the injuries. We do not agree.

Here, defendant again argues that this instruction constituted plain error. The indictment alleged "hitting [Gainey] with his hands" and the trial court's instruction provided "hitting and/or scratching [Gainey]." Assuming arguendo, that the instruction was flawed, it does not rise to the level of plain error. In reviewing the entire record to "determine if the instructional error had a probable impact on the jury's finding of guilt," *Odom*, 307 N.C. at 661, 300 S.E.2d at 379, we conclude that it did not. This assignment of error is dismissed.

[7] Defendant's remaining argument is that the trial court erred by failing to incorporate a "full self-defense" instruction into the assault inflicting serious injury charge. When instructing the jury on the

assault inflicting serious injury charge, the trial court stated that "I'm not going to reread the instruction on self defense to you. Just remember the instructions I gave you previously, because they apply in this offense as well as in the prior one." Defendant argues that "the jury failed to hear the full instruction regarding self-defense with the elements of the charge in mind." We are not persuaded.

The trial court gave a complete self-defense instruction when it instructed the jury on the assault on a female charge. The trial court then instructed on the assault inflicting serious injury charge and provided a summary of the self-defense instruction and incorporated by reference the earlier instruction. From the transcript, the two instructions were given in close proximity as only two pages of transcript exist between the complete self-defense instruction and the complained of instruction. Under the plain error standard "reversal is justified when the claimed error is so basic, prejudicial, and lacking in its elements that justice was not done." *State v. Prevatte*, 356 N.C. 178, 258, 570 S.E.2d 440, 484 (2002). The absence of a second full self-defense instruction here is not plain error. This assignment of error is dismissed.

[8] In addition, defendant argues that the trial court erred by not instructing the jury on the lesser included offenses of affray or simple assault. This Court "will not consider arguments based upon issues which were not presented or adjudicated by the trial tribunal. Further, the lack of an exception or assignment of error addressed to the issue attempted to be raised is a fatal defect." *State v. Smith*, 50 N.C. App. 188, 190, 272 S.E.2d 621, 623 (1980) (citations omitted). Defendant did not object at trial to this portion of the jury instructions and the record does not contain any assignments of error pertaining to the failure of the trial court to give instructions on the lesser included offenses of affray or simple assault. Accordingly, this argument is waived.

[9] Next, defendant contends that his habitual felon conviction must be vacated because habitual misdemeanor assault is not a substantive offense. Defendant concedes that *State v. Smith*, 139 N.C. App. 209, 214, 533 S.E.2d 518, 520, *appeal dismissed*, 353 N.C. 277, 546 S.E.2d 391 (2000) held that the habitual misdemeanor assault statute defines a substantive offense. Defendant asks this Court to review the issue and overrule *Smith*. "When a panel of this Court has decided the same issue in a different case, subsequent panels are bound to the decision until it is overturned by a higher court." *State v. Taylor*, 128 N.C. App. 394, 402, 496 S.E.2d 811, 816-17, *aff'd*, 349 N.C. 219, 504

S.E.2d 785 (1998). We are bound by *Smith* and overrule this assignment of error.

[10] Defendant next contends that his habitual misdemeanor assault convictions must be vacated because the habitual misdemeanor assault statute is unconstitutional. Specifically, defendant argues that G.S. § 14-33.2 is unconstitutional on its face and is unconstitutional as applied to the defendant. We do not agree.

Defendant argues that the habitual misdemeanor assault statute is unconstitutional as applied to defendant because it retroactively increases the punishment for defendant's five misdemeanor charges used to support the habitual misdemeanor assault charge. Defendant argues that some of the prior misdemeanors preceded the enactment of the habitual misdemeanor assault statute. Defendant argues that this violates the *ex post facto* clauses of the United States and North Carolina Constitutions.

Defendant's argument that the felony of habitual misdemeanor assault violates the *ex post facto* prohibitions has already been rejected by this Court. *See Smith*, 139 N.C. App. at 214-15, 533 S.E.2d at 521. Because the habitual misdemeanor assault statute "does not impose punishment for previous crimes, but imposes an enhanced punishment for behavior occurring after the enactment of the statute, because of the repetitive nature of such behavior, we hold the habitual misdemeanor assault statute does not violate the prohibition on *ex post facto* laws." *Id.*

Defendant's remaining argument is that G.S. § 14-33.2 is unconstitutional on its face. Defendant argues that his conviction violates double jeopardy because his prior misdemeanor convictions are elements of the habitual misdemeanor assault offense. Defendant further argues that his habitual misdemeanor assault conviction violates double jeopardy because it is a substantive offense, rather than a penalty enhancing offense.

These same arguments were made by the defendant in *State v. Vardiman*, 146 N.C. App. 381, 552 S.E.2d 697 (2001), *cert. denied*, —— U.S. ——, —— L. Ed. 2d —— (Oct. 7, 2002) (No. 01-10066) in challenging the habitual impaired driving statute. The *Vardiman* court rejected those arguments and upheld the constitutionality of the habitual impaired driving statute. *Id.* at 383, 552 S.E.2d at 699. Because we conclude that the logic of *Vardiman* applies with equal force here, we hold that the habitual misdemeanor assault statute

does not violate the United States Constitution or the North Carolina Constitution provisions against double jeopardy.

G.S. § 14-33.2 (2001) states that:

> A person commits the offense of habitual misdemeanor assault if that person violates any of the provisions of G.S. 14-33(c) or G.S. 14-34 and has been convicted of five or more prior misdemeanor convictions, two of which were assaults. A person convicted of violating this section is guilty of a Class H felony.

This Court has previously noted the similarities in the habitual misdemeanor assault statute and the habitual impaired driving statute. *See Smith,* 139 N.C. App. at 213, 533 S.E.2d at 520 ("Both the habitual misdemeanor assault statute and the habitual impaired driving statute declare that a person 'commits the offense' if that person currently commits specified acts and has been convicted of a specified number of similar offenses in the past."); *Vardiman,* 146 N.C. App. at 386, 552 S.E.2d at 700 ("[T]he habitual misdemeanor assault statute was congruent in form to the habitual driving while impaired statute such that both were substantive and not 'merely' status offenses."). This Court's reasoning in *Vardiman* is instructive here with regard to the defendant's double jeopardy argument.

The *Vardiman* court "concluded that 'the legislature must not have intended to make habitual impaired driving *solely* a punishment enhancement status.' " *Vardiman,* 146 N.C. App. at 385, 552 S.E.2d at 700 (emphasis in original) (quoting *State v. Priddy,* 115 N.C. App. 547, 549, 445 S.E.2d 610, 612, *disc. review denied,* 337 N.C. 805, 449 S.E.2d 751 (1994)).

> Statutes criminalizing behavior such as theft and murder, which are substantive offenses, are subject to double jeopardy analysis. *Habitual impaired driving, however, is a substantive offense and a punishment enhancement (or recidivist, or repeat-offender) offense.*

It is not disputed that the habitual impaired driving statute is a recidivist statute. Of the aforementioned cases that draw a distinction between substantive and status offenses, none hold a recidivist statute unconstitutional for double jeopardy reasons. Throughout the country, recidivist statutes are routinely upheld against double jeopardy concerns. The more authentic distinction to be drawn in assessing double jeopardy concerns is between

recidivist and non-recidivist statutes, not between substantive and status offenses. While most recidivist statutes are set out in language that makes them classifiable as status offenses, the difference between a status offense and the habitual impaired driving statute, a substantive offense, is merely one of form, not substance. Prior convictions of driving while impaired are the elements of the offense of habitual impaired driving, but the statute "does not impose punishment for [these] previous crimes, [it] imposes an enhanced punishment" for the latest offense.

*Id.* at 385, 552 S.E.2d at 700 (citation omitted) (emphasis added). The court then relied on *Smith* to "hold that the habitual impaired driving statute does not punish prior convictions a second time, but rather punishes the most recent conviction more severely because of the prior convictions." *Id.* at 386, 552 S.E.2d at 701.

Here, "[a] close analysis of the precise wording of the habitual offender statutes in North Carolina reveals the intent of the Legislature that habitual misdemeanor assault be a substantive offense *rather than merely a status* for purposes of sentence enhancement." *Smith*, 139 N.C. App. at 212, 533 S.E.2d at 519-20 (emphasis added). Applying the reasoning in *Vardiman* here, we conclude that habitual misdemeanor assault "is a substantive offense *and* a punishment enhancement (or recidivist, or repeat-offender) offense." *Vardiman*, 146 N.C. App. at 385, 552 S.E.2d at 700 (emphasis in original).

The defendant in *Vardiman* also argued that habitual impaired driving violated the double jeopardy provisions because the statute "encompasses prior driving while impaired convictions as *elements* of the crime of habitual driving while impaired." *Vardiman*, 146 N.C. App. at 386, 552 S.E.2d at 701 (emphasis in original). Again, the *Vardiman* court's rationale is instructive.

Defendant cites a litany of cases that seem to stand for the proposition that "when a criminal offense *in its entirety* is an essential element of another offense a defendant may not be punished for both offenses." The United States Supreme Court, however, distinguishes *prior convictions* as elements of a crime from other elements of a crime, holding that "*[o]ther than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." *Apprendi* is in line with our conclusion in the case *sub judice,* that whether a statute sur-

vives a double jeopardy constitutional analysis does not depend on whether the statute is called substantive or status, or whether the statute is comprised of elements or sentencing factors, but what the statute accomplishes in reality. The point that "[l]abels do not afford an acceptable answer . . . applies as well . . . to the constitutionally novel and elusive distinction between 'elements' and 'sentencing factors.' " "Despite what appears to us the clear 'elemental' nature of the factor here, the relevant inquiry is one not of form, but of effect[.]" The effect of section 20-138.5 is that a defendant is punished more severely for a recent crime based on having committed previous crimes. Consequently, section 20-138.5 does not violate the United States and North Carolina Constitutions.

*Id.* at 386-87, 552 S.E.2d at 701 (citations omitted).

This Court has previously stated that "the habitual misdemeanor assault statute similarly does not impose punishment for previous crimes, but imposes an enhanced punishment for behavior occurring after the enactment of the statute." *Smith,* 139 N.C. App. at 214, 533 S.E.2d at 521. Accordingly, we hold that the habitual misdemeanor assault statute does not violate the double jeopardy provisions of the United States and North Carolina Constitutions.

[11] Defendant next contends that his habitual felon conviction must be vacated because the trial court erred by failing to dismiss the indictment due to incompetent prior convictions. Defendant argues that the trial court erred by denying his motion to dismiss the habitual felon indictment because the two New Jersey convictions were "not felonies within the meaning of the North Carolina Habitual Felons Act." Defendant contends that the State did not show that defendant's New Jersey convictions were felonies under the law of New Jersey. We agree.

In *State v. Lindsey,* 118 N.C. App. 549, 552-53, 455 S.E.2d 909, 911-12 (1995), this Court reversed the denial of defendant's motion to dismiss his habitual felon charge when one of the three convictions was a New Jersey conviction. *Lindsey* noted that:

> The indictment does not charge defendant with felonious possession of stolen property. The judgment does not recite that defendant pled guilty to a felony or was sentenced as a felon. There was no certification from any official that the offense charged in Count III was a felony in New Jersey in 1975. We can-

not conclude from the length of defendant's sentence (two to three years) that the offense was a felony in New Jersey.

*Id.* at 553, 455 S.E.2d at 912. The *Lindsey* court "agree[d] with [the] defendant that the State did not present substantial evidence that this third conviction relied upon was a felony as required by our law." *Id.*

Here, defendant's two New Jersey judgments do not state that he was convicted of a felony or sentenced as a felon. In addition, there was no certification from any official that the two offenses were felonies in New Jersey. We note the State's argument that defendant could have received sentences exceeding one year for each of his two New Jersey convictions and that "under New Jersey law, offenses punishable by more than one year in prison constitute common-law felonies." *United States v. Brown*, 937 F.2d 68, 70 (2nd Cir. 1991). However, *Lindsey* provided that "[w]e cannot conclude from the length of defendant's sentence (two to three years) that the offense was a felony in New Jersey." *Lindsey*, 118 N.C. App. at 553, 455 S.E.2d at 912. We conclude that the trial court erred in denying defendant's motion to dismiss the habitual felon indictment.

Because we conclude that defendant's habitual felon conviction must be vacated due to incompetent prior convictions and the matter must be remanded for resentencing, we need not address defendant's remaining assignments of error regarding his habitual felon conviction and prior record level.

No error in part, reversed in part, vacated in part and remanded for resentencing.

Judges TYSON and THOMAS concur.