ELMORE, Judge.
 

 *353
 
 Kim Sydnor (defendant) was found guilty of assault on a female, habitual misdemeanor
 
 *912
 
 assault, and attaining the status of an habitual
 
 *354
 
 felon. The trial court sentenced defendant to a term of 88 to 118 months imprisonment and ordered him to pay $5,000.00 in restitution. After review, we vacate defendant's sentence and the trial court's award of restitution, and we remand for resentencing and a new hearing on restitution.
 

 I. Background
 

 On 22 March 2014, Wake County sheriff's deputies were called to the home of Willie Brown where they found Joynita Sydnor with injuries to her face. Ms. Sydnor told the deputies that she and her husband, defendant, had gotten into an argument when defendant hit her in the face. The deputies interviewed Mr. Brown and another witness at the scene, Nellie Jernigan, who corroborated Ms. Sydnor's statement. After speaking with the deputies, Ms. Sydnor was transported to WakeMed Hospital in Raleigh and treated for her injuries. A warrant for defendant's arrest was issued thereafter.
 

 On 24 June 2014, the Wake County Grand Jury returned a four-count indictment against defendant. Counts one and three charged defendant with the principal misdemeanor offenses of assault on a female and simple assault, respectively, and counts two and four charged defendant with habitual misdemeanor assault. Each count of habitual misdemeanor assault alleged that defendant had previously been convicted of two assault offenses: (1) misdemeanor assault on a female on 14 August 2000, and (2) felony assault inflicting serious bodily injury on 30 May 2007. Defendant was charged in a separate indictment for attaining the status of an habitual felon based on three prior felony convictions: (1) sale of counterfeit controlled substances on 10 August 2000; (2) possession of cocaine on 14 March 2003; and (3) assault inflicting serious bodily injury on 30 May 2007.
 

 The case came to trial on 17 November 2014 in Wake County Superior Court. The jury found defendant guilty of assault on a female, and not guilty of simple assault. Defendant stipulated that his two prior assault convictions, as alleged in the principal indictment, rendered him eligible to be prosecuted for habitual misdemeanor assault. Defendant also pleaded guilty to habitual felon status based on the three prior felony convictions alleged in the habitual felon indictment.
 

 At sentencing, the trial court calculated thirteen prior record points, resulting in a prior record level IV. The court sentenced defendant as an habitual felon, elevating the habitual misdemeanor assault conviction from a Class H to a Class D felony, and imposed an active sentence of 88 to 118 months imprisonment with credit for 236 days served. The trial
 
 *355
 
 court also ordered defendant to pay $5,000.00 in restitution to WakeMed for Ms. Sydnor's unpaid medical bills. Defendant timely appeals.
 

 II. Discussion
 

 A. Habitual Felon Status
 

 Defendant first argues that the habitual felon indictment against him was fatally defective because the State used the same conviction, felony assault inflicting serious bodily injury, to support habitual felon status and to enhance the assault on a female charge to habitual misdemeanor assault. Defendant contends, therefore, that the trial court had no jurisdiction to sentence him as an habitual felon.
 

 "[W]here an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time, even if it was not contested in the trial court."
 
 State v. Wallace,
 

 351 N.C. 481
 
 , 503,
 
 528 S.E.2d 326
 
 , 341,
 
 cert. denied,
 

 531 U.S. 1018
 
 ,
 
 121 S.Ct. 581
 
 ,
 
 148 L.Ed.2d 498
 
 (2000). This Court "review[s] the sufficiency of an indictment
 
 de novo.
 
 "
 
 State v. McKoy,
 

 196 N.C.App. 650
 
 , 652,
 
 675 S.E.2d 406
 
 , 409 (2009).
 

 Pursuant to North Carolina's Habitual Felon Act, "[a]ny person who has been convicted of or pled guilty to three felony offenses ... is declared to be an habitual felon and may be charged as a status offender pursuant to this Article." N.C. Gen.Stat. § 14-7.1 (2015). To put the defendant on notice "that he is being prosecuted for some substantive felony as a recidivist,"
 
 State v. Allen,
 

 292 N.C. 431
 
 , 436,
 
 233 S.E.2d 585
 
 , 588 (1977), the principal felony and habitual felon
 
 *913
 
 status must be charged in separate indictments, N.C. Gen.Stat. § 14-7.3 (2015). The habitual felon indictment must include "the three prior felony convictions relied on by the State...."
 
 State v. Cheek,
 

 339 N.C. 725
 
 , 729,
 
 453 S.E.2d 862
 
 , 865 (1995) ;
 
 see also
 
 N.C. Gen.Stat. § 14-7.3 (2015) (setting forth the requirements for a valid habitual felon indictment). Upon conviction of the principal felony and, subsequently, attaining habitual felon status, the defendant "must ... be sentenced and punished as an habitual felon...." N.C. Gen.Stat. § 14-7.2 (2015). Habitual felon status "is not a crime in and of itself,"
 
 State v. Kirkpatrick,
 

 345 N.C. 451
 
 , 454,
 
 480 S.E.2d 400
 
 , 402 (1997), but a "status justifying an increased punishment for the principal felony."
 
 State v. Priddy,
 

 115 N.C.App. 547
 
 , 549,
 
 445 S.E.2d 610
 
 , 612 (1994) (citation omitted).
 

 North Carolina's habitual misdemeanor assault statute, which is partly recidivist in nature, provides as follows:
 

 *356
 
 A person commits the offense of habitual misdemeanor assault if that person violates any of the provisions of G.S. 14-33 and causes physical injury, or G.S. 14-34, and has two or more prior convictions for either misdemeanor or felony assault.... A person convicted of violating this section is guilty of a Class H felony.
 

 N.C. Gen.Stat. § 14-33.2 (2015). Unlike habitual felon status, "habitual misdemeanor assault 'is a substantive offense
 
 and
 
 a punishment enhancement (or recidivist, or repeat-offender) offense.' "
 
 State v. Carpenter,
 

 155 N.C.App. 35
 
 , 49,
 
 573 S.E.2d 668
 
 , 677 (2002) (quoting
 
 State v. Vardiman,
 

 146 N.C.App. 381
 
 , 385,
 
 552 S.E.2d 697
 
 , 700 (2001),
 
 cert. denied,
 

 537 U.S. 833
 
 ,
 
 123 S.Ct. 142
 
 ,
 
 154 L.Ed.2d 51
 
 (2002) ). The statute treats the defendant's prior assault convictions as elements of habitual misdemeanor assault. It does not, however, " 'impose punishment for [these] previous crimes,' " but instead " 'imposes an enhanced punishment' for the latest offense."
 
 Vardiman,
 

 146 N.C.App. at 385
 
 ,
 
 552 S.E.2d at 700
 
 (quoting
 
 State v. Smith,
 

 139 N.C.App. 209
 
 , 214,
 
 533 S.E.2d 518
 
 , 521 (2000) );
 
 see also
 

 Carpenter,
 

 155 N.C.App. at 48
 
 ,
 
 573 S.E.2d at
 
 676-77 (citing prior decisions that note similarities between habitual misdemeanor assault statute and habitual impaired driving statute).
 

 Although the habitual felon statute and the habitual misdemeanor assault statute have both survived constitutional challenges based on double jeopardy,
 
 see
 

 State v. Todd,
 

 313 N.C. 110
 
 , 117-18,
 
 326 S.E.2d 249
 
 , 253 (1985) (holding habitual felon statute constitutional);
 
 Carpenter,
 

 155 N.C.App. at 50
 
 ,
 
 573 S.E.2d at 678
 
 (holding habitual misdemeanor assault statute constitutional), our decisions have recognized limitations on using the same prior convictions to support an habitual offense and to increase a defendant's prior record level at sentencing.
 

 A prior conviction used to establish habitual felon status, for example, may not also be used to determine a defendant's prior record level at sentencing. N.C. Gen.Stat. § 14-7.6 (2015) ;
 
 State v. Wells,
 

 196 N.C.App. 498
 
 , 502-03,
 
 675 S.E.2d 85
 
 , 88 (2009) ;
 
 State v. Miller,
 

 168 N.C.App. 572
 
 , 575-76,
 
 608 S.E.2d 565
 
 , 567 (2005) ;
 
 State v. Lee,
 

 150 N.C.App. 701
 
 , 703-04,
 
 564 S.E.2d 597
 
 , 598-99 (2002) ;
 
 State v. Bethea,
 

 122 N.C.App. 623
 
 , 626,
 
 471 S.E.2d 430
 
 , 432 (1996). As we explained in
 
 State v. Bethea,
 

 there are two independent avenues by which a defendant's sentence may be increased based on the existence of prior convictions. A defendant's prior convictions will either serve to establish a defendant's status as an habitual felon pursuant to G.S. 14-7.1 or to increase a defendant's
 
 *357
 
 prior record level pursuant to G.S. 15A-1340.14(b)(1)-(5). G.S 14-7.6 establishes clearly, however, that the existence of prior convictions may not be used to increase a defendant's sentence pursuant to both provisions at the same time.
 

 Bethea,
 

 122 N.C.App. at 626
 
 ,
 
 471 S.E.2d at 432
 
 .
 

 Likewise, a prior conviction used to support the offense of habitual impaired driving may not also be used to increase a defendant's prior record level.
 
 State v. Gentry,
 

 135 N.C.App. 107
 
 , 111,
 
 519 S.E.2d 68
 
 , 70-71 (1999) ("We believe it is reasonable to conclude that that same legislature did not intend that the convictions which elevate a misdemeanor driving while impaired conviction to the status of the felony of habitual
 
 *914
 
 driving while impaired, would then again be used to increase the sentencing level of the defendant.").
 

 In addition, a conviction for habitual misdemeanor assault may "not be used as a prior conviction for any other habitual offense statute." N.C. Gen.Stat. § 14-33.2 ;
 
 State v. Shaw,
 

 224 N.C.App. 209
 
 , 212,
 
 737 S.E.2d 596
 
 , 598 (2012) ("A prior habitual misdemeanor assault conviction may not ... be utilized as a predicate felony for the purpose of establishing that a convicted defendant has attained habitual felon status.").
 
 Cf.
 

 State v. Holloway,
 

 216 N.C.App. 412
 
 , 414-15,
 
 720 S.E.2d 412
 
 , 413-14 (2011) (holding that a defendant convicted of the principal felony of habitual misdemeanor assault may be sentenced as an habitual felon).
 

 This Court has held, however, that the same prior conviction may be used to support an habitual misdemeanor offense and habitual felon status. In
 
 State v. Misenheimer,
 

 123 N.C.App. 156
 
 , 157,
 
 472 S.E.2d 191
 
 , 192,
 
 cert. denied,
 

 344 N.C. 441
 
 ,
 
 476 S.E.2d 128
 
 (1996), the defendant was indicted for felony habitual impaired driving and for attaining habitual felon status. The defendant argued that two of his prior convictions could not be used simultaneously to support the habitual impaired driving conviction and to enhance his sentence as an habitual felon.
 

 Id.
 

 We first noted that, pursuant to N.C. Gen.Stat. § 14-7.6, a court may not enhance a defendant's felony level to Class C "on the grounds he is an habitual felon" and also place a defendant "in a higher presumptive range because of his prior record level, when the increased presumptive range is based upon the same convictions which make him an habitual felon."
 

 Id.
 

 at 157-58
 
 ,
 
 472 S.E.2d at 192
 
 . We concluded, however, that there was no similar statutory prohibition against using the defendant's prior convictions as elements of habitual impaired driving and to establish his status as an habitual felon.
 
 Id.
 
 at 158,
 
 472 S.E.2d at 192-93
 
 .
 

 *358
 
 We reaffirmed our holding from
 
 Misenheimer
 
 in
 
 State v. Glasco,
 

 160 N.C.App. 150
 
 ,
 
 585 S.E.2d 257
 
 (2003). In
 
 Glasco,
 
 the defendant argued that his constitutional protection against double jeopardy was violated because "the court used the offense of possession with intent to sell and deliver cocaine to support both the underlying substantive felony (the 'felon' portion of the offense of felon in possession of a firearm) and the habitual felon indictment."
 
 Id.
 
 at 160,
 
 585 S.E.2d at 264
 
 . We rejected this argument, explaining that "[o]ur courts have determined that elements used to establish an underlying conviction may also be used to establish a defendant's status as a habitual felon."
 

 Id.
 

 (citing
 
 Misenheimer,
 

 123 N.C.App. at 158
 
 ,
 
 472 S.E.2d at
 
 192-93 ).
 

 Applying our decisions from
 
 Misenheimer
 
 and
 
 Glasco
 
 to the case
 
 sub judice,
 
 we conclude that the trial court had jurisdiction to sentence defendant as an habitual felon. Defendant's prior conviction for felony assault inflicting serious bodily injury was alleged as a predicate offense to support the indictment charging him with habitual misdemeanor assault. That the same offense, felony assault inflicting serious bodily injury, was also used as a predicate felony to establish defendant's status as an habitual felon does not render the indictment defective.
 

 The trial court did err, however, in calculating defendant's prior record level. In Section I of the sentencing worksheet, the court assigned four points for a single "Prior Felony Class E or F or G Conviction." The only Class E, F, or G felony conviction listed in Section V of the worksheet was defendant's 30 May 2007 conviction for "Assault Inflicting Serious Bodily Injury." Because that same offense was used to support the habitual misdemeanor assault conviction and establish defendant's status as an habitual felon, it could not also be used to determine defendant's prior record level at sentencing. N.C. Gen.Stat. § 14-7.6 ;
 
 Gentry,
 

 135 N.C.App. at 111
 
 ,
 
 519 S.E.2d at 70-71
 
 . Had the conviction been properly excluded, defendant would have been sentenced at a prior record level III instead of IV. Accordingly, we vacate defendant's sentence and remand for resentencing.
 

 B. Restitution
 

 Defendant next argues that the trial court erred in ordering defendant to pay $5,000.00 in restitution because the amount
 
 *915
 
 of the award was not supported by competent evidence.
 

 A trial court's entry of an award of restitution is deemed preserved for appellate review under N.C. Gen.Stat. § 15A-1446(d)(18) even without a specific objection.
 

 *359
 

 State v. Mumford,
 

 364 N.C. 394
 
 , 403,
 
 699 S.E.2d 911
 
 , 917 (2010) ;
 
 State v. Shelton,
 

 167 N.C.App. 225
 
 , 233,
 
 605 S.E.2d 228
 
 , 233 (2004) (citing
 
 State v. Reynolds,
 

 161 N.C.App. 144
 
 , 149,
 
 587 S.E.2d 456
 
 , 460 (2003) ).
 

 "[T]he amount of restitution recommended by the trial court must be supported by evidence adduced at trial or at sentencing."
 
 State v. Wilson,
 

 340 N.C. 720
 
 , 726,
 
 459 S.E.2d 192
 
 , 196 (1995) (citing
 
 State v. Daye,
 

 78 N.C.App. 753
 
 , 756,
 
 338 S.E.2d 557
 
 , 560,
 
 aff'd per curiam,
 

 318 N.C. 502
 
 ,
 
 349 S.E.2d 576
 
 (1986) );
 
 see also
 
 N.C. Gen.Stat. § 15A-1340.36(a) (2015) ( "The amount of restitution must be limited to that supported by the record...."). Where "there is some evidence as to the appropriate amount of restitution," the award will not be disturbed on appeal.
 
 State v. Hunt,
 

 80 N.C.App. 190
 
 , 195,
 
 341 S.E.2d 350
 
 , 354 (1986). Our North Carolina Supreme Court has explained that
 

 [i]n applying this standard our appellate courts have consistently engaged in fact-specific inquiries rather than applying a bright-line rule. Prior case law reveals two general approaches: (1) when there is no evidence, documentary or testimonial, to support the award, the award will be vacated, and (2) when there is specific testimony or documentation to support the award, the award will not be disturbed.
 

 State v. Moore,
 

 365 N.C. 283
 
 , 285,
 
 715 S.E.2d 847
 
 , 849 (2011).
 

 Moore,
 
 however, was one of those cases which, "like many others, [fell] in between" the two approaches outlined above.
 

 Id.
 

 In Moore, the trial court ordered the defendant to pay an aggrieved property owner $39,332.49 in restitution based on the owner's testimony that estimated repairs to her property "totaled 'thirty-something thousand dollars.' "
 

 Id.
 

 Our Supreme Court rejected the State's argument that the testimony was sufficient to support an award "anywhere between $30,000.01 and $39,999.99."
 
 Id.
 
 at 285-86,
 
 715 S.E.2d at 849
 
 . The Court held that "there was 'some evidence' to support an award of restitution; however, the evidence was not specific enough to support the award of $39,332.49."
 

 Id.
 

 Like the victim's testimony in
 
 Moore,
 
 here Ms. Sydnor's testimony provides "some evidence" to support a restitution award but is too vague to support the award of $5,000.00. The only evidence of the cost of Ms. Sydnor's medical treatment was her own testimony that her medical bills were "over $5,000," but she was "not sure" whether they were more than $6,000.00. Contrary to the State's position, her testimony establishes only that her medical bills were in excess of $5,000.00. To hold that this
 
 *360
 
 evidence is sufficient to support the $5,000.00 award would be to hold any award more than $5,000.00 sufficient, as well. Therefore, we vacate the award and remand to the trial court for a new hearing to determine the amount of Ms. Sydnor's WakeMed hospital bills, and to calculate an amount of restitution supported by the evidence.
 
 See
 

 Moore,
 

 365 N.C. at 286
 
 ,
 
 715 S.E.2d at 849-50
 
 (remanding " to determine the amount of damage proximately caused by defendant's conduct and to calculate the correct amount of restitution").
 

 III. Conclusion
 

 Although defendant's prior offense of assault inflicting serious bodily injury may be used to support convictions of habitual misdemeanor assault and habitual felon status, it may not also be used to determine defendant's prior record level. In addition, our review of the record shows that Ms. Sydnor's testimony was too vague to support the award of restitution. We vacate defendant's sentence and the trial court's award of restitution, and we remand for resentencing and a new hearing on restitution.
 

 VACATED IN PART AND REMANDED.
 

 Judges CALABRIA and ZACHARY concur.