PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-4078

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

RODNEY MARSHALL VINSON,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:13-cr-00121-FL-1)

Argued: January 27, 2015          Decided: July 21, 2015

Before TRAXLER, Chief Judge, and GREGORY and AGEE, Circuit Judges.

Vacated and remanded by published opinion. Chief Judge Traxler wrote the opinion in which Judge Agee joined. Judge Gregory wrote a separate dissenting opinion.

**ARGUED**: Barbara Dickerson Kocher, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. Robert Earl Waters, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee. **ON BRIEF**: Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee.

TRAXLER, Chief Judge:

Police officers dispatched to the residence of Rodney Marshall Vinson found a rifle and ammunition during a consensual search. After determining that Vinson had a prior North Carolina conviction amounting to a "misdemeanor crime of domestic violence," 18 U.S.C. § 921(a)(33)(A), the government charged Vinson with possession of a firearm by a prohibited person, see 18 U.S.C. § 922(g)(9). The district court granted Vinson's motion to dismiss the indictment, concluding that Vinson was not a prohibited person because the state statute at issue did not, as a categorical matter, qualify as a misdemeanor crime of domestic violence. The government appeals, arguing that the analytical approach referred to as the "modified categorical approach" applies to this case and establishes that Vinson was convicted of a qualifying misdemeanor crime of domestic violence. We agree with the government, and we therefore vacate the district court's order dismissing the indictment and remand with instructions that the district court reinstate the indictment against Vinson.

I.

Section 922(g) prohibits the possession of firearms by various classes of persons, including those convicted of a "misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9).

2

Subject to certain exceptions not relevant here, a crime qualifies as a "misdemeanor crime of domestic violence" if it:

> (i) is a misdemeanor under Federal, State, or Tribal . . . law; and

> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A).

The existence of the domestic relationship between the victim and defendant specified in the statute is an element of the § 922(g)(9) charge that must be proven beyond a reasonable doubt by the government, but the relationship need not be an element of the underlying state statute. See United States v. Hayes, 555 U.S. 415, 426 (2009). As is clear from the terms of the statute, the use or attempted use of physical force, or threatened use of a deadly weapon, must be an element of the underlying state offense. The "physical force" element of § 921(a)(33)(A) is satisfied "by the degree of force that supports a common-law battery conviction," United States v. Castleman, 134 S. Ct. 1405, 1413 (2014), "namely, offensive touching," id. at 1410.

Vinson was convicted under N.C. Gen. Stat. § 14-33, a statute that classifies simple and aggravated forms of misdemeanor assault, assault and battery, and affray. Subsection (a) provides

3

that "[a]ny person who commits a simple assault or a simple assault and battery or participates in a simple affray is guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 14-33(a). Subsection (c) addresses aggravated forms of the crimes, providing that:

> (c) . . . [A]ny person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he or she:
>
> (1) Inflicts serious injury upon another person or uses a deadly weapon;
>
> (2) Assaults a female, he being a male person at least 18 years of age;
>
> (3) Assaults a child under the age of 12 years;
>
> (4) Assaults an officer or employee of the State or any political subdivision of the State, when the officer or employee is discharging or attempting to discharge his official duties;
>
> (5) Repealed . . . ; or
>
> (6) Assaults a school employee or school volunteer when the employee or volunteer is discharging or attempting to discharge his or her duties as an employee or volunteer, or assaults a school employee or school volunteer as a result of the discharge or attempt to discharge that individual's duties as a school employee or school volunteer. . . .

N.C. Gen. Stat. § 14-33(c). Because there is no statutory definition of assault, battery, or affray, the common-law rules governing these crimes apply to prosecutions under N.C. Gen. Stat. § 14-33. See State v. Roberts, 155 S.E.2d 303, 305 (N.C. 1967). The record establishes that Vinson was convicted of violating subsection (c)(2) of the statute.

4

To determine whether a prior conviction renders the defendant a prohibited person under § 922(g), we apply the familiar "categorical approach." Castleman, 134 S. Ct. at 1413. Under the categorical approach, we look "'only to the fact of conviction and the statutory definition of the prior offense'. . . . , focus[ing] on the elements of the prior offense rather than the conduct underlying the conviction." United States v. Cabrera-Umanzor, 728 F.3d 347, 350 (4th Cir. 2013) (internal quotation marks omitted).

A modification to the categorical approach may be used in cases where the underlying state crime "consists of multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not." Omargharib v. Holder, 775 F.3d 192, 197 (4th Cir. 2014) (internal quotation marks omitted). When such "divisible" crimes are at issue, we may apply the "modified categorical approach," which permits us "to examine a limited class of documents to determine which of a [crime's] alternative elements formed the basis of the defendant's prior conviction." Descamps v. United States, 133 S. Ct 2276, 2284 (2013).[1] "General divisibility,

---

[1] Although Descamps addressed a state crime defined by statute, we have since held that the Descamps analysis applies to state crimes whose elements are defined by case law rather than by

however, is not enough; a [state crime] is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the [crime] may be divided constitutes, <u>by its elements</u>, [a qualifying predicate offense]." <u>Cabrera-Umanzor</u>, 728 F.3d at 352; <u>see</u> <u>Descamps</u>, 133 S. Ct. at 2285.

The district court concluded that § 14-33(c)(2) was not divisible and that the modified categorical approach was therefore inapplicable. Applying the categorical approach, the district court concluded that a violation of 14-33(c)(2) did not amount to a misdemeanor crime of domestic violence because the use or threatened use of physical force is not an element of assault under North Carolina law. In reaching this conclusion, the district court applied this court's decision in <u>United States v. White</u>, 606 F.3d 144 (4th Cir. 2010), and interpreted the "physical force" requirement of § 921(a)(33)(A)(ii) to mean "violent force," <u>see</u> <u>id.</u> at 153 ("[T]he phrase 'physical force' means <u>violent</u> force -- that is, force capable of causing physical pain or injury to another person." (internal quotation marks omitted)).

---

statute. <u>See</u> <u>United States v. Aparicio-Soria</u>, 740 F.3d 152, 155 (4th Cir. 2014) (en banc) ("[T]he categorical/modified categorical typologies apply equally to statutory and common law crimes."); <u>United States v. Hemingway</u>, 734 F.3d 323, 333 (4th Cir. 2013) ("[T]he <u>Descamps</u> divisibility analysis is applicable to the question of whether a common law offense constitutes a[] . . . predicate crime.").

6

After the district court granted Vinson's motion to dismiss, however, the Supreme Court issued its decision in Castleman and held, directly contrary to our holding in White, that violent force was not necessary to satisfy the "physical force" requirement of § 921(a)(33)(A)(ii). See Castleman, 134 S. Ct. at 1413. Instead, the Court held that the statute "incorporated the common-law meaning of 'force' -- namely, offensive touching," id. at 1410, and that "the requirement of 'physical force' is satisfied, for purposes of § 922(g)(9), by the degree of force that supports a common-law battery conviction," id. at 1413.

## III.

The sole issue on appeal is whether Vinson's conviction under N.C. Gen. Stat. § 14-33(c)(2) qualifies as a conviction for a misdemeanor crime of domestic violence ("MCDV") as defined by 18 U.S.C. § 921(a)(33)(A). The government does not challenge the district court's determination that Vinson's conviction would not qualify as an MCDV under the categorical approach.[2] Instead, the

---

[2] As the district court held, convictions under N.C. Gen. Stat. § 14.33(c)(2) do not categorically require the use or attempted use of physical force. See, e.g., State v. Allen, 95 S.E.2d 526, 529 (N.C. 1956) (defendant's actions in repeatedly stopping his car a few feet away from the victim and staring at her while "moving the lower part of his body back and forth" sufficient to support conviction for assault); State v. McIver, 56 S.E.2d 604, 607 (N.C. 1949) (affirming assault conviction based on defendant's "repeated obscene proposals"); State v. Williams, 120

government argues that, contrary to the district court's conclusion, § 14-33(c)(2) is divisible, such that the modified categorical approach may be applied. And because the charging document in this case shows that the conviction was predicated on a battery of Vinson's wife, the government contends that the modified categorical approach establishes that Vinson was convicted of an MCDV and that the district court therefore erred by dismissing the indictment against Vinson.

A.

Under N.C. Gen. Stat. § 14-33(c)(2), a defendant is "guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he . . . [a]ssaults a female, he being a male person at least 18 years of age." The district court understood § 14-33(c)(2) as establishing the crime of assault on a female, a crime that can be committed through an assault, assault and battery, or an affray. In the district court's view, assault, battery, and affray were alternate means of committing the crime, not alternate elements, such that § 14-33(c)(2) was not divisible. See Omargharib, 775 F.3d at 198 (explaining that alternate means

S.E. 224, 225 (N.C. 1923) (affirming assault conviction in case involving no use or attempted use of force and jury was instructed that obscene comments made on three separate occasions by a 23-year-old man to 15-year-old girl could amount to "a display of force" sufficient for conviction).

of committing a single crime do make the crime divisible); see also Descamps, 133 S. Ct. at 2285 n.2.

Section 14-33(c)(2)'s "in the course of the assault, assault and battery, or affray" language certainly sounds like language creating an element of a crime. Cf., e.g., 18 U.S.C. § 924(c)(1) (creating enhanced sentence for a defendant who "uses or carries a firearm" "during and in relation to any crime of violence or drug trafficking crime" (emphasis added)); United States v. Strayhorn, 743 F.3d 917, 925 (4th Cir.) ("To prove [a] violation of 18 U.S.C. § 924(c)(1), the government must show that the defendant used or carried a firearm and that he did so during and in relation to a drug trafficking crime or a crime of violence."), cert. denied, 134 S. Ct. 2689 (2014). Nonetheless, we are "bound by the state supreme court's . . . determination of the elements of the potential predicate offense," United States v. Hemingway, 734 F.3d 323, 333 (4th Cir. 2013) (internal quotation marks and alterations omitted), and the only elements of assault on a female under § 14-33(c)(2) identified by the Supreme Court of North Carolina are "(1) an assault (2) upon a female person (3) by a male person (4) who is at least eighteen years old," State v. Wortham, 351 S.E.2d 294, 296 (N.C. 1987). Because the statute's in-the-course-of language does not create elements of the offense, that language does not render the crime divisible.

The government, however, contends that the crime is divisible because North Carolina law defines "assault" through alternate elements. North Carolina law includes three different definitions of the crime of assault. First, under what can be called the "attempted battery" formulation, an assault can be committed by "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." Roberts, 155 S.E.2d at 305 (internal quotation marks omitted). Second, under the "show of violence" formulation, an assault can be committed by "a show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed." Id. Finally, under the "completed battery" formulation, an assault conviction may be premised on proof of a battery. See In re K.C., 742 S.E.2d 239, 243 (N.C. Ct. App. 2013) ("When a battery has occurred, assault may be proven by a finding of either assault or battery on the victim."); State v. Britt, 154 S.E.2d 519, 521 (N.C. 1967) ("A battery always includes an assault, and is an assault whereby any force is applied, directly or indirectly, to the person of another."). The government argues that these different formulations of assault are

10

alternate elements that render the crime divisible and thus permit application of the modified categorical approach.

## B.

As we have explained, the modified categorical approach applies only in cases where the state crime is "divisible" because it "consists of multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not." Omargharib, 775 F.3d at 197 (internal quotation marks omitted).

### 1.

Taking the last part of the divisibility definition first, we must determine whether "at least one of the categories into which the [crime] may be divided constitutes, by its elements, [a qualifying predicate offense]." Cabrera-Umanzor, 728 F.3d at 352. Given the Supreme Court's decision in Castleman, that question is easily answered in the affirmative.

As previously discussed, the Court in Castleman held that § 921(a)(33)(A)'s "physical force" requirement "is satisfied . . . by the degree of force that supports a common-law battery conviction," Castleman, 134 S. Ct. at 1413, including "mere offensive touching," id., and indirect applications of force, such as deceiving the victim into drinking poison, see id. at 1414-15. The definition and scope of "battery" under North Carolina law is no broader than the common-law definition set out in Castleman.

11

See, e.g., State v. Sudderth, 114 S.E. 828, 829 (N.C. 1922) (defining battery as, inter alia, "an assault whereby any force, however slight, is actually applied to the person of another directly or indirectly"); State v. Monroe, 28 S.E. 547, 548 (N.C. 1897) (druggist who placed diarrhea-inducing croton oil on a piece of candy at customer's request guilty of assault and battery when druggist knew customer intended to give tainted candy to friend as a prank). Thus, any conviction for the completed-battery form of assault would necessarily include a use of physical force sufficient to satisfy the federal definition of an MCDV. Accordingly, if North Carolina's different theories of assault make the crime divisible, use of the modified categorical approach would be proper because the crime of assault by completed battery categorically qualifies as an MCDV.[3] We turn to the divisibility question now.

2.

"[A] crime is divisible under Descamps only if it is defined to include multiple alternative elements (thus creating multiple versions of a crime), as opposed to multiple alternative means (of committing the same crime)." Omargharib, 775 F.3d at 198. "Elements, as distinguished from means, are factual circumstances

---

[3]    Our resolution of this question makes it unnecessary to consider whether, as the government contends, the attempted-battery form of assault also categorically qualifies as an MCDV.

12

of the offense the jury must find unanimously and beyond a reasonable doubt." Id. (internal quotation marks omitted). Although we have found no North Carolina case that directly answers the means-or-elements question required by Descamps,[4] we are satisfied that, as the government argues, the alternate formulations of the crime of assault are alternate elements of what are effectively separate crimes, not alternate means of committing the same crime.[5]

Preliminarily, we note that each formulation of the crime involves a different type of conduct -- an attempted use of force; a show of violence without even an attempted use of force; and a completed, nonconsensual use of force against another person. Each of the formulations has its own unique set of elements, and each set of elements directs the jury's focus to different aspects of

---

[4] In order to directly answer the means-or-elements question, a case would likely need to involve a jury charge that included multiple formulations of assault and definitively treated those formulations either as elements requiring unanimity or as means not requiring unanimity. Cf. Omargharib v. Holder, 775 F.3d 192, 201 (4th Cir. 2014) (Niemeyer, J., concurring) (discussing the difficulty in distinguishing alternate means from alternate elements).

[5] As will be discussed later, the majority in Descamps stated that a court need not "parse state law" to determine whether a criminal offense is divisible, but instead need only consult the indictment or other approved documents. Descamps v. United States, 133 S. Ct. 2276, 2285 n.2 (2013). In post-Descamps cases, however, this court has continued to evaluate state law when resolving the divisibility question. See Omargharib, 775 F.3d at 198-99; United States v. Royal, 731 F.3d 333, 341 (4th Cir. 2013), cert. denied, 134 S. Ct. 1777 (2014).

13

the crime -- the attempted-battery formulation of assault "places emphasis on the intent or state of mind of the person accused," Roberts, 155 S.E.2d at 305, while the show-of-violence form "places the emphasis on the reasonable apprehension of the person assailed," id., and the completed-battery form focuses "not [on] the hostile intent of the defendant, but rather [on] the absence of consent to the contact on the part of the plaintiff," In re K.C., 742 S.E.2d at 244 (internal quotation marks omitted). That the kind of conduct proscribed by the different formulations of assault differs quite significantly suggests that, for purposes of our § 922(g)(9) analysis, the different formulations should be treated as separate crimes warranting the use of the modified categorical approach. See Chambers v. United States, 555 U.S. 122, 126 (2009) (holding that modified categorical approach may be applied to statute that proscribed "several different kinds of behavior" that "differ[] so significantly" from each other that they must, for purposes of the predicate-offense inquiry, be treated as separate crimes).[6]

---

[6]    In this regard, it is worth noting that while a battery always constitutes an assault, battery nonetheless retains a separate identity under North Carolina law. See, e.g., N.C. Gen. Stat. Ann. § 14-31 (making it unlawful to "maliciously commit [in a secret manner] an assault and battery with any deadly weapon upon another by waylaying or otherwise, with intent to kill such other person" (emphasis added)); State v. Hill, 209 S.E.2d 528, 531 (N.C. Ct. App. 1974) ("[T]he offense of secret assault contains five elements: (1) assault and battery, (2) deadly weapon, (3)

14

Moreover, North Carolina's assault formulations are fundamentally different in nature from those things that we have previously identified as alternate means under Descamps. We have held that non-exhaustive lists of various acts that satisfy an element of a crime are alternate means, not alternate elements. See Hemingway, 734 F.3d at 333-34; Cabrera-Umanzor, 728 F.3d at 353. The assault formulations at issue here, however, provide fully functioning, stand-alone, alternative definitions of the offense itself, and these definitions capture the entire universe of the ways in which an assault may be committed. The nature and operation of the assault formulations thus indicate that they operate as alternate definitions or elements for the offense of assault, not alternate means of committing the offense. See Descamps, 133 S. Ct. at 2291 ("Courts may modify the categorical approach to accommodate alternative statutory definitions." (second emphasis added; citations and internal quotation marks omitted)); State v. Barksdale, 638 S.E.2d 579, 582 n.1 (N.C. Ct.

_____

intent to kill, (4) secret manner, and (5) malice." (emphasis added)). That is, battery remains an independent crime, see, e.g., N.C. Gen. Stat. Ann. § 14-23.6(a) ("A person is guilty of the separate offense of battery on an unborn child if the person commits a battery on a pregnant woman. . . ." (emphasis added)), one that can be established even in the absence of conduct that would satisfy the elements of attempted-battery or show-of-violence assault. See State v. Lassiter, 196 S.E.2d 592, 595 (N.C. Ct. App. 1973) (in assault case involving completed battery, jury need not decide whether victim was in fear of bodily injury, as would be required to prove attempted-battery assault).

15

App. 2007) (acknowledging, in case involving attempted-battery form of assault, "a second, different definition of assault called the 'show of violence' rule" (emphasis added)).

When determining the divisibility of a state crime, this court has looked to the manner in which the offense is charged to the jury. See Omargharib, 775 F.3d at 199 (considering pattern jury instructions when determining whether offense was divisible under Descamps); United States v. Royal, 731 F.3d 333, 341 (4th Cir. 2013) ("[T]o decide whether 'offensive physical contact' and 'physical harm' are alternative elements of the completed battery form of second-degree assault, we consider how Maryland courts generally instruct juries with respect to that offense."). If the different formulations were alternate means rather than alternate elements, one would expect to find cases where all three formulations were included in the jury instructions. See, e.g., State v. Hartness, 391 S.E.2d 177, 178-80 (N.C. 1990) (trial court did not err in instructing jury that "[a]n indecent liberty is an immoral, improper or indecent touching or act by the defendant upon the child," because "immoral, improper, or indecent liberties" referred to in statute were not elements of the offense of taking an indecent liberty with a child, but alternative means of violating the statute). In North Carolina, however, courts generally are not required to give the jury any definition of assault beyond a description of the charged conduct. See, e.g.,

16

_State v. Hewitt_, 237 S.E.2d 338, 339 (N.C. Ct. App. 1977) (trial court's failure to define assault not error: "[T]he trial judge instructed the jury that the first element the State must prove was that the defendant assaulted [the victim] by intentionally shooting him with a pistol. This instruction explained the term assault and applied the law to the evidence." (emphasis omitted)). Thus, while our research has revealed no case where all three formulations were charged to the jury, there are numerous cases where assault is defined only by way of the charged conduct, such that the jury is presented with only one formulation of the offense. See _State v. West_, 554 S.E.2d 837, 840 (N.C. Ct. App. 2001) (no error in jury instructions that "only define[d] assault as committed by a battery"); _State v. Dammons_, 461 S.E.2d 6, 8 (N.C. Ct. App. 1995) (instructions in assault case proper where trial court informed jury that "the State was required to prove beyond a reasonable doubt that defendant 'intentionally' shot [the victim] with a handgun" and that "defendant would not be guilty of the assault if the shooting was accidental"); _State v. Daniels_, 247 S.E.2d 770, 771-72 (N.C. Ct. App. 1978) (failure to define assault not error where "jury was instructed that it must find from the evidence and beyond a reasonable doubt that defendant 'struck [the victim] over the head with a blackjack'"); _State v. McCoy_, 239 S.E.2d 300, 302 (N.C. Ct. App. 1977) (no error in failing to define assault where instructions "included an adequate

17

description of the facts constituting the assault for which the defendant was charged"); State v. Harris, 238 S.E.2d 642, 644 (N.C. Ct. App. 1977) (failure to define assault not error where "the trial judge instructed the jury in connection with each offense submitted that to convict defendant it must find beyond a reasonable doubt 'that the defendant assaulted [the victim] by intentionally shooting him with a pistol'"); State v. Springs, 234 S.E.2d 193, 195-96 (N.C. Ct. App. 1977) (no error in not defining assault where trial court instructed jury that the state must prove "'that the defendant assaulted [the victim] by intentionally and without justification or excuse shooting [the victim] in the upper left chest with a shotgun'"); cf. State v. Lineberger, 446 S.E.2d 375, 378 (N.C. Ct. App. 1994) (trial court erred by not defining assault in response to jury's question in case where defendant "shouldered" security officer); State v. Hickman, 204 S.E.2d 718, 719 (N.C. Ct. App. 1974) (finding reversible error where trial court charged that the jury must find beyond a reasonable doubt that defendant "'assaulted [the victim] with a knife'" but did not define assault). These cases reflect the general approach in North Carolina to instructing the jury in assault cases. Except in cases with multiple assault counts based on different conduct, see, e.g., State v. Spellman, 605 S.E.2d 696, 701-02 (N.C. Ct. App. 2004), a single definition of assault typically is given, and that

18

definition often is nothing more than a description of the charged conduct.[7]

This general practice of using a single definition of assault in the jury instructions is consistent with the approach recommended by North Carolina's past and current pattern jury instructions. Under the pattern assault-on-a—female instruction that was in effect when Vinson pleaded guilty to that crime, the only required definition of assault was a description of the underlying conduct.[8] See N.C. Pattern Instructions - Crim. 208.70 (March 2002). Likewise, the current pattern instruction does not require that the trial court define assault beyond describing the underlying conduct. See N.C. Pattern Instructions - Crim. 208.70

---

[7] As the dissent points out, this general approach is not universal. See State v. Garrison, 736 S.E.2d 610, 612 (N.C. Ct. App. 2013) (using attempted-battery definition in case involving completed battery); State v. Carpenter, 573 S.E.2d 668, 674-75 (N.C. Ct. App. 2002) (in case involving completed battery, court initially defined assault by describing charged conduct, but gave attempted-battery definition in response to jury question). Contrary to the dissent's view, however, we do not believe that the existence of an outlying case or two prevents us from concluding that the assault formulations are alternate elements of the offense. Given all the other factors indicating that the assault formulations operate as alternate elements, Garrison and Carpenter do not undermine our ultimate conclusion.

[8] The dissent notes that the 2002 pattern instruction includes the traditional definition of attempted-battery assault. Because that definition is placed inside parentheses, however, use of the definition is "[o]ptional" and the definition should be given "only when warranted by the evidence." N.C. Pattern Instructions, "Guide to the Use of This Book," at xx. The directions to "describe assault," which are italicized and placed inside parentheses, refer to "facts that the judge must fill in." Id. at xix (emphasis added).

19

(June 2011). And to the extent that a definition might be needed in a given case, the current pattern instructions do not recommend instructing the jury on all assault formulations as alternative means of committing the crime of assault. Cf. N.C. Pattern Instructions – Crim. 226.85 (April 2003) (including the alternate means identified in State v. Hartness in instruction for indecent-liberties offense). Instead, the pattern instructions for assault distinguish between the completed-battery and other formulations of the offense by calling for use of the most appropriate battery-based definition of assault in cases where a battery was involved and use of the most appropriate assault-based definition in cases where no battery was involved. See N.C. Pattern Instructions - Crim. 120.20 (June 2011).

In our view, the North Carolina trial courts' general practice of instructing the jury using a single formulation of assault and the absence of any case law affirmatively supporting the alternate-means theory indicates that the alternate formulations operate as alternate elements or definitions of the offense. The pattern jury instructions, with their focus on the single form of assault implicated by the underlying facts, likewise indicate that the alternate formulations of assault are alternate elements, not alternate means.

This understanding of the assault formulations is supported by the North Carolina Court of Appeals' decision in State v.

20

Garcia, 553 S.E.2d 914 (N.C. Ct. App. 2001).  In Garcia, the court

vacated the defendant's conviction for simple assault because the

arrest warrant serving as the charging instrument,[9] which purported

to charge the defendant with assault by show of violence, was

deficient:

> A warrant charging an assault by show of violence must
> allege: (1) a show of violence by the defendant; (2)
> accompanied by reasonable apprehension of immediate
> bodily harm or injury on the part of the person assailed;
> (3) causing the victim to engage in a course of conduct
> which she would not otherwise have followed.
>
> . . . . While the arrest warrant alleged an assault and
> listed facts supporting the elements of a show of
> violence . . . and a deviation from her normal activities
> by the victim, the arrest warrant fails to allege any
> facts to support the element of reasonable apprehension
> of immediate bodily harm or injury on the part of the
> person assailed.  As this is an essential element of an
> assault by show of violence, the arrest warrant, by
> omitting facts supporting the element of a "reasonable
> apprehension of immediate bodily harm," fails to charge
> Defendant with the commission of an assault under this
> theory.  Accordingly, as the arrest warrant failed to
> sufficiently charge Defendant with a crime . . . , the
> trial court erred in failing to dismiss the charge as
> stated in the criminal pleading.

Id. at 915 (emphasis added; internal quotation marks and alteration

omitted).  Garcia thus clearly treats the show-of-violence

formulation of assault not as an alternative means of committing

---

[9]   See N.C. Gen. Stat. § 15A-922(a) ("The citation,
criminal summons, warrant for arrest, or magistrate's order serves
as the pleading of the State for a misdemeanor prosecuted in the
district court, unless the prosecutor files a statement of charges,
or there is objection to trial on a citation.").

21

the crime of assault, but as a separate crime with its own separate elements.[10] And if one of the three formulations of assault under North Carolina law is a separate crime, we can conceive of no basis for treating the other formulations otherwise. Accordingly, we conclude that, for purposes of our inquiry under 18 U.S.C. § 922(g)(9), the attempted-battery and completed-battery forms of assault, just like the show-of-violence form at issue in Garcia, effectively create separate crimes with separate elements.

---

[10] The dissent contends that it is improper for us to rely on Garcia because Garcia is inconsistent with State v. Thorne, 78 S.E.2d 140 (N.C. 1953), which found an indictment alleging that the defendant "violated the laws of North Carolina by assault on one Harvey Thomas" sufficient to support a charge of simple assault. Id. at 142 (alterations and internal quotation marks omitted). We disagree. Twenty years after Thorne was decided, North Carolina passed the Criminal Procedure Act, which requires that criminal pleadings contain "[a] plain and concise factual statement in each count which . . . asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." N.C. Gen. Stat. § 15A-924(a)(5). As the Supreme Court of North Carolina has recognized, § 15A-924(a)(5) "supplanted prior law," such that pre-Act cases addressing the contents of indictments "are no longer controlling on this issue." State v. Worsley, 443 S.E.2d 68, 73 (N.C. 1994).

As the dissent notes, Worsley considered the sufficiency of a burglary indictment, and the common-law pleading rule that was "supplanted" in that case was more restrictive than the new rule set forth in § 15A-924(a)(5). See Worsley, 443 S.E.2d at 73. Contrary to the dissent's assertion, however, Worsley's recognition that the Act superseded prior inconsistent cases cannot be limited to burglary cases imposing stricter pleading requirements. Because Garcia was interpreting § 15A-924(a)(5), we believe it is proper to rely on it rather than Thorne.

22

Our review of North Carolina law thus satisfies us that the various formulations of assault are alternate elements or definitions of the offense, not alternate means. While the dissent disagrees with our assessment of North Carolina law, our conclusion is also compelled by the approach for resolving the elements-versus-means question suggested by the Supreme Court in Descamps. In Descamps, the dissent expressed concern about the difficulty in distinguishing alternate means from alternate elements. See Descamps, 133 S. Ct. at 2297-98 (Alito, J., dissenting). In response, the majority stated that when an elements-versus-means question arises,

> the documents we approved in Taylor and Shepard -- i.e., indictment, jury instructions, plea colloquy, and plea agreement -- would reflect the crime's elements. So a court need not parse state law in the way the dissent suggests: When a state [offense is formulated] in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.

Descamps, 133 S. Ct. at 2285 n.2. And as we explain, the relevant document serves as an additional confirmation that the various assault formulations serve as alternate elements of the offense.

The document serving as the indictment in this case is a "Magistrate's Order" finding probable cause for the detention of the defendant after a warrantless arrest. See N.C. Gen. Stat. §§ 15A-921(4), 15A-922(a). A Magistrate's Order serving as a criminal pleading must include "a statement of the crime of which the person

23

is accused," N.C. Gen. Stat. § 15A-511(c)(3)(a), and must contain "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant . . . of the conduct which is the subject of the accusation," N.C. Gen. Stat. § 15A-924(a)(5).

The factual statement contained in the Magistrate's Order in this case states that Vinson "unlawfully and willfully did assault and strike FRANCIS DEANNA VINSON, a female person, by HITTING HER ABOUT HER FACE WITH HIS OPEN HAND." J.A. 38. These facts do not describe the attempted-battery or show-of-violence forms of assault, as there are no facts supporting the reasonable-apprehension elements of those crimes. See Garcia, 553 S.E.2d at 915; see also Roberts, 155 S.E.2d at 305 (describing elements of attempted-battery and show-of-violence forms of assault). The facts alleged in the Magistrate's Order, however, are more than sufficient to support every element of the completed-battery form of assault, which has no reasonable-apprehension requirement. See Sudderth, 114 S.E. at 829 ("[A] battery is the actual unlawful infliction of violence on the person of another, and may be proved by evidence of any unlawful touching of [victim's] person . . . ." (internal quotation marks omitted)); see also State v. Thompson, 219 S.E.2d 566, 568 (N.C. Ct. App. 1975) ("Where the evidence

24

discloses an actual battery, whether the victim is put in fear is inapposite." (internal quotation marks omitted)).

The Magistrate's Order thus charges Vinson with assault by completed battery, which establishes that the various formulations of assault are alternate elements or definitions of the offense, which in turn establishes that the offense of assault on a female is divisible.[11]  See Descamps, 133 S. Ct. at 2285 n.2; see also United States v. Martinez, 762 F.3d 127, 133-34 (1st Cir. 2014) (finding divisible a Massachusetts assault and battery statute that covered "three types of battery: (1) harmful battery; (2) offensive battery; and (3) reckless battery" (internal quotation marks omitted)).

Because the offense is divisible, the modified categorical approach is applicable.[12]  Under the modified categorical approach,

_____

[11]    The dissent complains that this analysis is circular, in that the general rule is that courts may look to charging documents only if the offense is divisible.  Regardless of the dissent's view of this approach, it is the approach dictated by the Supreme Court.  See Descamps, 133 S. Ct. at 2285 n.2 (explaining that "a court need not parse state law" to determine whether an offense involves alternate means or alternate elements, because "the documents we approved in Taylor and Shepard -- i.e., indictment, jury instructions, plea colloquy, and plea agreement – w[ill] reflect the crime's elements").  In any event, as our opinion makes clear, we do not rely solely on this approach but instead rely on it as confirmation of our understanding of North Carolina law.

[12]    We recognize that this court has previously determined that various assault offenses are not divisible, such that the modified categorical approach could not be applied.  See, e.g., United States v. Aparicio-Soria, 740 F.3d 152, 154 (4th Cir. 2014)

25

Vinson's prior conviction qualifies as an MCDV:  The relevant charging document establishes that Vinson was convicted of the completed-battery form of assault under North Carolina law.  And as we have already explained, the crime of assault by completed battery categorically qualifies as an MCDV.  The district court therefore erred by dismissing the indictment charging Vinson with unlawful possession of a firearm by a person convicted of an MCDV.

---

(en banc) (holding that Maryland's resisting-arrest statute (which includes elements of assault) was not divisible for purposes of determining whether a conviction under that statute qualified as a "crime of violence" under U.S.S.G. § 2L1.2); Royal, 731 F.3d at 341 (holding that Maryland's second-degree assault statute was not divisible for purposes of determining whether prior conviction qualified as a violent felony under the Armed Career Criminal Act). The conclusions in those cases that assault does not have alternative elements were based on Maryland law and thus are not inconsistent with our contrary conclusion in this case, which is based on North Carolina law.

Moreover, as we have explained, whether a statute or criminal offense is divisible depends on the existence of alternate elements and a matching category – that is, the alternate elements must create at least one category or form of an offense that matches up to the elements of the generic federal offense in question. See Omargharib, 775 F.3d at 197; Cabrera-Umanzor, 728 F.3d at 352. The generic federal offenses at issue in Aparicio-Soria and Royal both required the underlying state offense to have as an element the use or attempted use of violent force. See Aparicio-Soria, 740 F.3d at 154-55; Royal, 731 F.3d at 341-42. Even if the completed-battery form of assault did have alternate elements under Maryland law, the offense still would not have been divisible in Aparicio-Soria or Royal because there would be no matching category, since battery can be predicated on an "offensive touching" not amounting to violent force. In this case, of course, the generic federal offense does not require violent force, and the completed-battery form of assault therefore does create a matching category.

26

IV.

Accordingly, for the foregoing reasons, we hereby vacate the district court's order dismissing the indictment against Vinson, and we remand with instructions that the district court reinstate the indictment.

<u>VACATED AND REMANDED</u>

GREGORY, Circuit Judge, dissenting:

This case presents the question of whether a court should treat a state offense as divisible when the relevant state law is itself ambiguous and/or inconsistently applied. North Carolina's common law crime of assault is one such offense. See United States v. Kelly, 917 F. Supp. 2d 553, 556-59 (W.D.N.C. 2013) (conducting a detailed review of North Carolina common law and describing it as a "quagmire of alternative definitions for assault on a female"). In the face of that uncertainty, it would be prudent to err on the side of constitutional caution, construing state law in a way that minimizes the lurking Sixth Amendment danger of imposing a sentence based on a fact that need not be found beyond a reasonable doubt. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Yet the majority chooses to rely on tenuous suppositions, inapposite jury instructions, and the decision of a state intermediate appellate court (at odds with the state supreme court) to hold that assault is a divisible offense in North Carolina. Still more problematic, the majority proceeds to assert that courts need not look to state law at all and may instead rely solely on the factual allegations of a charging document to determine divisibility in these circumstances. Such circular logic is plainly at odds with the analytical approach required by the Supreme Court and consistently used by this Court.

28

More broadly speaking, the majority's view disregards the Supreme Court's teaching that the modified categorical approach should only apply to a "narrow range of cases," such as where a single burglary statute includes the effectively separate crimes of entry of an automobile and building. Descamps v. United States, 133 S. Ct. 2276, 2284 (2013) (observing that, in such circumstances, "the prosecutor charges one of those two alternatives, and the judge instructs the jury accordingly"). And by divining divisibility in the face of uncertainty, the majority also disregards how courts typically construe ambiguity in criminal offenses, where the resolution of the ambiguity has clear constitutional implications. Cf. Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."). Under the rule of lenity, for instance, "any criminal statute, including a sentencing provision, must be construed in favor of the accused and against the government if it is ambiguous." See United States v. Hall, 972 F.2d 67, 69 (4th Cir. 1992) (citing Bifulco v. United States, 447 U.S. 381, 387 (1980)); see also United States v. Santos, 553 U.S. 507, 514 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor

of the defendants subjected to them."); Kelly, 917 F. Supp. 2d at 561 (invoking the rule of lenity in deciding whether the crime of assault in North Carolina is categorically a misdemeanor crime of domestic violence under federal law). The majority charts a different course, and I therefore respectfully dissent.

I.

As the majority opinion recognizes, the modified categorical approach is appropriate only where alternative formulations of a statutory or common law offense constitute functionally distinct crimes. In those limited cases, the alternative element that matches a generic federal offense (here, the predicate offense of a "misdemeanor crime of domestic violence") will necessarily be charged and instructed separately. We can then be confident that a defendant was actually convicted of a crime that matched the federal offense, in keeping with Sixth Amendment safeguards.[1] When an offense is indivisible, on the other hand, a jury need not agree that an individual committed the specific alternative that matches the federal crime. Instead, a jury may simply conclude that a defendant engaged in one of several proscribed courses of conduct (some of which match the federal offense while others do not),

_____

[1] In the plea context specifically, limiting the use of the modified categorical approach to divisible offenses ensures that a plea "was to the version of the crime" that corresponds to the federal generic offense. Descamps, 133 S.Ct. at 2284.

30

without saying which occurred. See Omargharib v. Holder, 775 F.3d 192, 199 (4th Cir. 2014) (noting that a statute is indivisible when a jury need not unanimously agree that a defendant engaged in conduct that matched a federal generic offense).

Regarding the North Carolina crime of assault on a female, the majority acknowledges that no controlling state precedent establishes whether different types of assault must be treated as alternative elements that are charged and instructed separately. Maj. Op. at 13. Indeed, the only elements of the crime of "assault on a female" that the Supreme Court of North Carolina has enumerated are "(1) an assault, (2) upon a female person, (3) by a male person (4) who is at least eighteen years old." State v. Herring, 370 S.E.2d 363, 370 (N.C. 1988). Nonetheless, the majority concludes that the common law offense of assault is itself divisible, reasoning in part that the way the law looks "suggests" divisibility. Maj. Op. at 14. Under the majority's view, North Carolina common law cleanly carves an assault offense into three functionally distinct crimes: 1) an "attempted-battery" assault; 2) a "completed-battery" assault; and 3) a "show of violence" assault.

Yet even on that superficial level, courts have recognized that the definition of assault under North Carolina common law is far from straightforward. See Kelly, 917 F. Supp. 2d at 556-57, 559 (noting some of the challenges in applying the various, and

31

sometimes inconsistent, formulations of assault articulated by North Carolina courts); see also State v. Daniel, 48 S.E. 544, 545 (N.C. 1904) ("While the law relating to this crime would seem to be simple and of easy application, we are often perplexed in our attempt to discriminate between what is and what is not an assault.").

Most generally, North Carolina courts have stated that there are two ways to commit an assault, both of which encompass conduct that falls outside the federal definition of a "misdemeanor crime of domestic violence." First, under what the majority terms an "attempted-battery" assault, courts have recognized that the "traditional common law definition of criminal assault is an overt act or attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." See State v. McDaniel, 433 S.E.2d 795, 797 (N.C. Ct. App. 1993) (citing State v. Roberts, 155 S.E.2d 303, 305 (N.C. 1967)). This definition is broader than the federal domestic violence predicate offense because it criminalizes the "unequivocal appearance of an attempt" whereas the federal crime only includes "the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A); see also United States v. Vinson, No. 5:13-CR-121-FL, 2013 WL 6843013, at *6 (E.D.N.C. Dec. 27, 2013)

32

(observing that "[t]his court is not convinced that the 'unequivocal appearance of an attempt' in the state law offense rises to the level of an attempt, as required by the federal offense"). Attempt is a specific intent crime, requiring that the "defendant consciously intends the completion of the acts comprising the choate offense." 21 Am. Jur. 2d Criminal Law § 155 (2015). But an "unequivocal appearance of an attempt" appears to require no such actual intent. See State v. Barksdale, 638 S.E.2d 579, 582 (N.C. Ct. App. 2007) (finding that a defendant's conduct qualified as an "unequivocal appearance of an attempt" even if it did not rise to the level of an attempt under state law).

Second, the North Carolina high court has recognized that an assault may also be committed through a "show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed." Roberts, 155 S.E.2d at 305. The majority and the government agree that this definition is also broader than the federal predicate offense because it does not require any use or attempted use of physical force whatsoever.

In addition to the two primary definitions of assault, North Carolina courts have provided a variety of others. For instance, in State v. West, the North Carolina Court of Appeals defined assault as "an intentional attempt, by violence, to do injury to

33

the person of another." 554 S.E.2d 837, 840 (N.C. Ct. App. 2001). And in State v. Hefner, the Supreme Court of North Carolina provided that "[a]n 'assault' is an offer or attempt by force or violence to do injury to the person of another." 155 S.E. 879, 879 (N.C. 1930).

A battery, meanwhile, has been defined by the state courts as "an assault whereby any force, however slight[,] is actually applied to the person of another directly or indirectly." State v. Sudderth, 114 S.E. 828, 829 (N.C. 1922); see also State v. Britt, 154 S.E.2d 519, 520-21 (N.C. 1967); West, 554 S.E.2d at 840. Thus, "[a] battery always includes an assault." Britt, 154 S.E.2d at 521; Hefner, 155 S.E. at 880.

In that light, must a court instruct a completed battery separately, or may it rely on the traditional common law definitions of assault in at least some cases where a battery is involved? May a court instruct a jury on both assault-without-battery and completed-battery assault and let the jury convict under either theory? May it instruct the attempted-battery formulation as a lesser included offense for completed battery? The answers to those questions are not forthcoming from definitions alone. Indeed, even where a state criminal statute has listed two ways to commit an offense in the alternative (which the North Carolina statute at issue does not), we have found the "use of the word 'or' in the definition of a crime does not automatically

34

render the crime divisible." Omargharib, 775 F.3d at 198. Still more on point, this Court in United States v. Royal determined that a Maryland assault statute was indivisible even though a definition of assault was framed in the disjunctive. 731 F.3d 333, 341 (4th Cir. 2013). This was true because "Maryland juries are not instructed that they must agree 'unanimously and beyond a reasonable doubt' on whether the defendant caused [either] 'offensive physical contact' or 'physical harm' to the victim; rather, it is enough that each juror agree only that one of the two occurred, without settling on which." Id.

What matters is thus not how an offense is defined in isolation, but instead how it is treated by state courts in practice. In that context, it is not enough to show that the different ways of committing an offense are sometimes charged and instructed separately at the discretion of a court, or even more often than not charged and instructed separately. Instead, the different forms of an offense must be charged and instructed separately under state law if they are to be considered alternative elements such that the modified categorical approach is permissible. See United States v. Beltran-Munguia, 489 F.3d 1042, 1045 (9th Cir. 2007) ("To constitute an element of a crime, the particular factor in question needs to be a constituent part of the offense [that] must be proved by the prosecution in every case to sustain a conviction under a given statute." (internal

35

quotation marks and emphasis omitted, alteration in original));

see also Omargharib, 775 F.3d at 198 ("Elements, as distinguished

from means, are factual circumstances of the offense the jury must

find unanimously and beyond a reasonable doubt." (internal

quotation marks omitted)).


II.

Looking to how North Carolina courts treat the crime of

assault in practice, the majority understandably turns to the

state's pattern jury instructions. See Omargharib, 775 F.3d at

199 (examining Virginia model jury instructions to determine

whether a state statute was divisible); Royal, 731 F.3d at 341

(looking to Maryland jury instructions for evidence of

divisibility). At the time of Vinson's conviction, the only

pattern instruction for "assault on a female" was 208.70, which

allowed a jury to convict based upon a finding that a defendant

engaged in any of a number of alternative types of conduct, some

of which did not involve the use or attempted use of physical

force. The instruction stated:

> The defendant, a male person, has been charged with
> assault on a female. (An assault is an overt act or
> an attempt, or the unequivocal appearance of an
> attempt, with force and violence, to do some
> immediate physical injury to the person of another,
> which show of force or menace of violence must be
> sufficient to put a person of reasonable firmness in
> fear of immediate bodily harm.)

> For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt:
>
> First, that the defendant intentionally (and without justification or excuse) assaulted the victim by (*describe assault*).
>
> Second, that the victim was a female person.
>
> And Third, that the defendant was a male person, at least eighteen years of age.

N.C.P.I. Crim. 208.70 (2002). Like North Carolina common law itself, the instruction is not a model of lucidity. But the instruction, if given fully with the parenthetical definition of assault, plainly allows a jury to convict even if the defendant did not use or attempt to use physical force. A jury could instead find that a defendant engaged in an "unequivocal appearance of an attempt," and the instruction also appears to sanction a finding of guilt based on a "menace of violence" – a standard that can be interpreted as consistent with the "show of violence" definition of assault previously discussed.

Of course, North Carolina courts are not required to follow the pattern instructions, see, e.g., State v. Garcell, 678 S.E.2d 618, 642-43 (N.C. 2009), and courts could have formulated completed-battery-specific instructions at the time of Vinson's conviction. Indeed, some of the cases cited by the majority suggest that courts created such instructions. But the model instructions nonetheless remain strong evidence of the default practice of courts. They are also consistent with the district

37

court's belief here that it was possible for a North Carolina jury to convict an individual of assault based on either a theory of assault-without-battery or assault-with-battery, without having to specify which version occurred. Vinson, 2013 WL 6843013, at *7. As the district court concluded, "[t]here is no requirement that the factfinder must determine which of the [types of assault] occurred in order to convict for the crime of assault on a female." Id.; see also Royal, 731 F.3d at 341 (drawing a similar conclusion regarding the Maryland offense of assault).

The determination that North Carolina courts are not required to use a single formulation of assault in their jury instructions finds substantial additional support in state case law. For instance, in State v. Carpenter, 573 S.E.2d 668 (N.C. Ct. App. 2002), a defendant was charged with assault on a female by "hitting [the victim] with his hands." Id. at 674-75. The trial court originally gave a battery-based instruction, asking the jury to determine whether "the defendant intentionally assaulted the victim by hitting her with his hands and feet." Id. at 674. But when the jury then asked for the "Definition of Assault," the court provided the model definition stated above, instructing that:

> An assault is . . . an overt act or an attempt or the unequivocal appearance of an attempt with force and violence to do some immediate physical injury to the person of another which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.

38

Id.  Reviewing the trial court's instruction, the Court of Appeals of North Carolina found no plain error, even though the indictment did not mention "attempt."  Id.  The appellate court reasoned that "[t]he trial court is not required to frame its instructions with any greater particularity than is necessary to enable the jury to understand and apply the law to the evidence bearing upon the elements of the crime charged."  Id. at 674-75.

Similarly, in State v. Garrison, 736 S.E.2d 610 (N.C. Ct. App. 2013), a North Carolina defendant was indicted for battery-based assaults that resulted in physical injuries like "a broken rib and a broken nose, cheekbone, and ruptured eardrum."  Id. at 612.  When the trial court instructed the jury on two counts of assault on a female, it used a version of the attempted-battery instruction, instead of a completed-battery instruction.  The instruction stated:

> [T]he defendant, a male person, has been charged with assault on a female on April 9th, 2010.  An assault is an overt act or an attempt to do some immediate physical injury to the person of another.
>
> For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt.
>
> First, that the defendant intentionally assaulted the alleged victim.
>
> Second, that the alleged victim was a female person.
>
> And, third, that the defendant was a male person at least eighteen years of age.

Id.

And in a case cited by the majority, State v. Lineberger, 446 S.E.2d 375 (N.C. Ct. App. 1994), the North Carolina Court of Appeals went so far as to find reversible error when a trial court failed to provide the jury with a version of the traditional common law definition of assault (including both attempted-battery assault and show-of-violence assault) in a case that involved an alleged completed battery of an off-duty police officer. Id. at 378-79. In Lineberger, the trial court originally instructed the jury to find the defendant guilty if it found the following beyond a reasonable doubt:

> First, that the defendant assaulted M.C. Hurley by intentionally and without justification or excuse, striking or bumping against him with his shoulder.
>
> Second, that M.C. Hurley was a law enforcement officer and the defendant knew or had reasonable grounds to know that Hurley was a law enforcement officer.
>
> And, third, that when the defendant struck or bumped against Hurley, Hurley was attempting to discharge a duty of his office, to it, ejecting the defendant from the premises in question.

Id. at 377. The Court of Appeals held that the instruction was deficient because it failed to define assault. Id. at 379. As for what definition should have been used, the court turned to the common law's understanding of assault as "an overt act or attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of

40

immediate bodily harm." Id. at 378-79 (internal quotation marks and citation omitted); see also State v. Hickman, 204 S.E.2d 718, 719 (N.C. Ct. App. 1974) (finding error when a trial court's instructions described the alleged conduct but failed to define assault).

Cases like Carpenter, Garrison, and Lineberger directly belie the majority's assertion that "a single definition of assault typically is given [in state assault cases], and that definition often is nothing more than a description of the charged conduct." Maj. Op. at 19. At the very least, the cases show the lack of consistency and precision in how North Carolina courts actually instruct juries on the charge of assault, even where an indictment alleges an underlying battery. The cases thus reveal the danger in circumstances where a charging document may describe what looks like a completed battery (necessarily involving the use of physical force), but the actual jury instructions later include language regarding the "unequivocal appearance of an attempt" or a "show of violence." Furthermore, North Carolina law regarding fatal variances between indictments and instructions appears to allow a court to include an instruction for an attempted-battery assault as a lesser included offense where the indictment alleges a completed-battery. See N.C. Gen. Stat. § 15-170 ("Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an

41

attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime."); State v. Squires, 591 S.E.2d 837, 841 (N.C. 2003) ("The elements of attempt are an intent to commit the substantive offense and an overt act which goes beyond mere preparation but falls short of the completed offense.").

Given the inconsistency and haziness in North Carolina jury instructions regarding assault, the instructions do little to establish divisibility. Indeed, one way of interpreting the addition of the more recent battery-based instruction the majority cites is as an attempt to bring needed clarity to a previously uncertain area of state law. This Court, however, is limited to the law as it existed at the time of Vinson's conviction.

III.

For further evidence of whether the crime of assault is divisible, the majority also prudently looks to whether the assault alternatives are charged separately. Finding no decision in the history of the Supreme Court of North Carolina to support the proposition that they must be so charged, the majority relies on the holding of the intermediate state appellate court in State v. Garcia, which concluded that an arrest warrant for simple assault must specify the type of assault charged, at least where a "show of violence" assault is alleged. 553 S.E.2d 914, 915 (N.C. Ct. App. 2001).

42

The rather considerable problem with relying on Garcia, however, is that the decision directly conflicts with the precedent of the Supreme Court of North Carolina. See United States v. Hemingway, 734 F.3d 323, 333 (4th Cir. 2013) ("[A] federal court is 'bound by the [state supreme court's] interpretation of state law, including its determination of the elements of' the potential predicate offense." (quoting Johnson v. United States, 559 U.S. 133, 138 (2010) (alterations in original)). In State v. Thorne, the high court unambiguously held that an indictment for simple assault need not specify the type of assault alleged. 78 S.E.2d 140 (N.C. 1953). As the court stated:

> To be sure, the allegation that the defendant (Evella Thorne) unlawfully, willfully violated the laws of North Carolina by assault on one Harvey Thomas is sufficient to charge a simple assault. This is so because it charges that offense with such a degree of certainty and in such a manner as to enable a person of common understanding to comprehend the charge, and the court to pronounce judgment on the conviction according to the law of the case, and the accused to plead an acquittal or conviction on it in bar of another prosecution for the same offense.

78 S.E.2d at 141-42 (internal quotation marks and alterations omitted); see also Strong's North Carolina Index 4th, Assault and Battery § 54 (citing Thorne for the proposition that "[a] warrant charging that the defendant on a certain day in a named city did unlawfully and willfully violate the laws of North Carolina by an assault on a named person is sufficient to charge the offense of a simple assault"). Thorne thus makes plain the state supreme

43

court's belief that the different formulations of assault are not different elements that must be charged separately. Instead, they are merely means to satisfy the single, indivisible, element of assault. See also State v. Jeffries, 291 S.E.2d 859, 860-61 (N.C. Ct. App. 1982) ("Assault is a requisite element of assault on a female.").

Notably, Thorne was decided before North Carolina enacted the Criminal Procedure Act, which requires that a criminal pleading contain "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." N.C. Gen. Stat. § 15A-924(a)(5). Such a standard, however, is similar to what was in place at the time of Thorne. Pre-existing precedent required that an indictment go beyond the language of a statute when the statute did not plainly set forth the essential elements of an offense. In those cases, "the statutory words must [have been] supplemented in the indictment by other allegations which explicitly and accurately set forth every essential element of the offense with such exactitude as to leave no doubt in the minds of the accused and the court as to the specific offense intended to be charged."

State v. Greer, 77 S.E.2d 917, 920 (N.C. 1953).[2]  Under that standard, Thorne established that the allegation that one individual assaulted another is sufficient, without the inclusion of any other essential elements, to support a charge of simple assault in North Carolina.

It is thus curious that Garcia fails to even mention Thorne. The omission is still more peculiar given the fact that Garcia itself uses language that mirrors the language used in cases from before the Criminal Procedural Act.  As Garcia observed:

> Generally, a warrant which substantially follows "the words of the statute is sufficient [as a criminal pleading] when it charges the essentials of the offense in a plain, intelligible, and explicit manner".  If the statutory language, however, "fails to set forth the essentials of the offense, then the statutory language must be supplemented by other allegations which plainly, intelligibly, and explicitly set forth every essential element of the offense as to leave no doubt in the mind of the defendant and the court as to the offense intended to be charged."

---

[2] In State v. Worsley, 443 S.E.2d 68, 73-74 (N.C. 1994), the Supreme Court of North Carolina overruled a specific subset of cases decided before the Criminal Procedure Act.  The cases concerned the specific issue of whether an "indictment for burglary must specify the particular felony which the defendant is alleged to have intended to commit at the time of breaking and entering." Id. at 73.  The court concluded that the Criminal Procedure Act had actually relaxed the common law pleading requirement and found that prior cases "are no longer controlling on this issue." Id. (emphasis added).  Indeed, the court observed that the "pleading requirements of the Criminal Procedure Act are more liberal" than the common law rules.  Id. (internal quotation marks omitted).  In that light, Worsley does not overrule Thorne's conclusion that an indictment for simple assault need not list any further elements of the crime.

45

553 S.E.2d at 915 (internal citations omitted, alterations in original). Similarly, the Supreme Court of North Carolina has continued to invoke pre-Criminal Procedure Act precedent in describing what is required in a charging document. See State v. Jones, 758 S.E.2d 345, 351 (N.C. 2014) (citing State v. Cook, 158 S.E.2d 820, 822 (N.C. 1968)). As if that were not enough, a leading encyclopedia on North Carolina law continues to cite Thorne as establishing that "[a] warrant charging that the defendant on a certain day in a named city did unlawfully and willfully violate the laws of North Carolina by an assault on a named person is sufficient to charge the offense of a simple assault." Strong's North Carolina Index 4th, Assault and Battery § 54.

Thus, the majority's reliance on Garcia as establishing divisibility is misplaced. Instead, Garcia at most shows the unsettled nature of the question.


IV.

The majority opinion not only relies on equivocal state law. Surprisingly, it goes a dramatic step further and reasons that a court need not look to state law at all in these circumstances and instead may turn directly to the description of alleged conduct in a charging document to establish divisibility. Such a standard turns Descamps and this Court's recent precedent on their respective heads.

46

As Descamps made plain, the modified categorical approach is not an exception to the categorical approach's fundamental imperative that courts may only look to the statutory elements of an offense, and not the specific facts underlying a conviction, to determine whether a conviction can count as a predicate offense. Descamps, 133 S.Ct. at 2283-84. This analytical framework is critical to preserve Sixth Amendment safeguards that protect against sending a person to jail, or lengthening his or her sentence, based on a fact that a factfinder need not necessarily find beyond a reasonable doubt. See Shepard v. United States, 544 U.S. 13, 24-25 (2005).

The majority, however, reasons in this case that the factual statement of alleged conduct in the Magistrate's Order "establishes that the various formulations of assault are alternate elements or definitions of the offense, which in turn establishes that the offense of assault on a female is divisible." Maj. Op. at 25-26. That simply cannot be. The Magistrate's Order does two things. First, it lists the offense that Vinson allegedly committed – N.C. Gen. Stat. § 14-33(c)(2). As previously discussed, nothing in the text of the statute itself suggests that assault is a divisible offense. Second, the order describes Vinson's alleged conduct to support the charge that an assault was committed. Nowhere, however, does the Order specify that Vinson was charged with a completed-battery variant of assault, to the

47

exclusion of other types of assault. In essence, the majority's logic boils down to this: Because a charging document describes conduct consistent with a battery, a completed-battery assault must be a separate element of an assault offense in North Carolina such that it is necessarily charged and instructed separately. Of course, that approach is backwards. Under Descamps, we must first look to state law to determine if an offense is divisible before then turning to documents of conviction to see if an individual was prosecuted under the alternative element that matches the federal definition.

To support its novel approach, the majority opinion relies on a footnote in Descamps suggesting that courts may consult the documents of conviction to determine divisibility when a statute lists alternative versions of a crime in the disjunctive and the documents thus also necessarily specify which version of the crime was charged, instructed, and/or pled to. See Descamps, 133 S. Ct. at 2285 n.2. To take the example used by the Supreme Court elsewhere in Descamps, we can imagine a burglary statute that prohibits unlawful entry of both cars and buildings. Id. at 2284. In that case, the statute presents alternative versions of a crime in the disjunctive and the documents of conviction will necessarily specify whether an individual has, in fact, been charged with the burglary of a car or building. Without looking any further, a court can be confident that the burglary offense is divisible.

48

But the relatively clear-cut situation anticipated by the footnote in Descamps is a very far cry from the instant circumstances, where the statute itself lists nothing in the alternative and a court must thus necessarily delve into state common law to determine if an offense is divisible in the first place. It stretches reason to try to understand how, in these circumstances, a court could discern divisibility by looking to nothing more than the description of alleged conduct in a Magistrate's Order. Indeed, this Court's post-Descamps cases have consistently looked to state law to determine if an offense is divisible before examining any documents of conviction. See United States v. Hemingway, 734 F.3d 323, 333-34 (4th Cir. 2013) (looking to South Carolina state law to determine whether a common law crime of assault and battery was divisible); Omargharib, 775 F.3d at 198-99 (finding the modified categorical approach inapplicable after conducting a detailed survey of Virginia state law and concluding that the statute at issue was not divisible, even though it listed ways to commit a crime in the disjunctive); Royal, 731 F.3d at 341 (turning to state law to determine whether the Maryland offense of assault was divisible and concluding that it was not).

Given the unsupported novelty of the majority's approach, and the uncertainty it creates for future cases, I can only hope that the full Court will grant rehearing to provide needed clarity and consistency.

49

V.

In sum, I cannot agree with the majority's conclusion that the state crime of assault encompasses functionally separate alternative offenses such that the modified categorical approach is permissible.

I respectfully dissent.